**GREATER BOSTON CHAMBER OF COMMERCE, Plaintiff,**

v.

**CITY OF BOSTON, Francis M. Roache as he is Commissioner of Police, and Raymond L. Flynn as he is Mayor of Boston, Defendants.**

**Civ. A. No. 90–12503–T.**

United States District Court, D. Massachusetts.

Sept. 23, 1991.

Patrick W. Hanifin, Stephen S. Ostrach, New England Legal Foundation, Boston, Mass., for plaintiff.

Joseph I. Mulligan, Albert W. Wallis, City of Boston Law Dept., Barry Wilson, Zalkind, Sheketoff, Wilson, Homan, Rodriguez & Lunt, Boston, Mass., William M. Kunstler, Ronald L. Kuby, New York City, for defendants.

## MEMORANDUM

TAURO, District Judge.

On July 25, 1990, the City Council of Boston ("City Council" or "Council") enacted an ordinance entitled "In Memory of Robert Waterhouse" ("Ordinance") over the veto of the Mayor of Boston. The Ordinance makes it unlawful for an employer (1) to hire "strikebreakers" during a strike or lockout or (2) to hire "replacement workers"[1] if their employment is likely to cause a threat to public safety or (3) to hire or to offer to hire a strikebreaker or replacement worker if doing so is likely to cause a threat to public safety.[2]

The Mayor vetoed the ordinance on advice of the Corporation Counsel, who opined that the Ordinance was unconstitutional as preempted by federal labor laws.[3] The City Council overrode the Mayor's veto.

This suit was brought by the Greater Boston Chamber of Commerce ("GBCC"), an organization whose members do business in Boston, to declare the Ordinance unconstitutional and to enjoin its enforcement by the defendant City of Boston ("City").[4] The City, whose attorney is the very same Corporation Counsel who had already averred that the Ordinance was unconstitutional, moved to dismiss this action. It claimed that plaintiff had failed to join an indispensable party, the City Council. After waiting several months for the Council to intervene, the City filed a motion, with plaintiff, for entry of judgment in plaintiff's favor. Finally, the City Coun-

---

1. The words "strikebreaker" and "replacement worker" are not terms of art but different characterizations of the same person. *See NLRB v. Curtin–Matheson Scientific, Inc.*, 494 U.S. 775, 110 S.Ct. 1542, 1549 n. 6, 108 L.Ed.2d 801 (1990), *quoting* R. Gorman, *Labor Law, Unionization & Collective Bargaining* 112 (1976).

2. The threat requirement in either case is satisfied by the deployment of a police officer or by the Police Commissioner's determination that a threat is likely. *See* Ordinance at § 3D.

3. *See* 29 U.S.C. § 151 *et seq.*

4. The Mayor and Police Commissioner are also named defendants.

cil moved to intervene. These motions are pending before the court.[5]

## I.

As a preliminary matter, the court must determine whether this case comes properly before it. There are two questions to be settled: 1) Does plaintiff have standing to sue and 2) is this a "case or controversy" within the meaning of Article III of the United States Constitution?

### A.

#### *Standing*

■ GBCC claims to have both associational standing and standing in its own right.[6] Because GBCC has associational standing, the court does not need to address the issue of GBCC's own standing.[7]

■ In order for an association to have standing to sue on behalf of its members, it must show 1) that its members would otherwise have standing to sue; 2) that the interests which it seeks to protect are germane to its purpose; and 3) that neither the claim it asserts nor the relief it requests requires its individual members to participate. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

GBCC's members would have standing to sue if they could show that they have suffered an actual or threatened injury traceable to defendant's action, and capable of redress by judicial decision. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). GBCC asserts that the Ordi-

nance injures every Boston employer, because it adversely affects the balance of power between management and labor.

The Supreme Court has repeatedly recognized that federal labor laws calibrate the balance of powers between management and labor, and that states may not disturb this balance. *See, e.g., New York Tel. Co. v. New York State Dept. of Labor*, 440 U.S. 519, 531, 99 S.Ct. 1328, 1336, 59 L.Ed.2d 553 (1979) (acknowledging statutory policy of allowing free play of economic forces in bargaining process). In *Machinists & Aerospace Workers v. Wis. Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), the Court held that states cannot proscribe the economic weapons of employers, if doing so would frustrate the processes of the national labor laws. *Id.* at 147–48, 96 S.Ct. at 2556–57. These laws strike "a balance of protection, prohibition, and laissez-faire in respect to union organization, collective bargaining, and labor disputes that would be upset if a state could also enforce statutes or rules of decision resting upon its views concerning accommodation of the same interests." *Id.* at 140 n. 4, 96 S.Ct. at 2553 n. 4, *quoting* Cox, *Labor Law Preemption Revisited*, 85 Harv.L.Rev. 1337, 1352 (1972).

One weapon that employers retain in waging labor disputes is the right to hire replacement workers. *Belknap, Inc. v. Hale*, 463 U.S. 491, 500, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983); *NLRB v. MacKay Radio & Tel. Co.*, 304 U.S. 333, 345, 58 S.Ct. 904, 910, 82 L.Ed. 1381 (1938). Because the Ordinance by its terms restricts this right, it arguably frustrates the pro-

---

**5.** The court gave leave to the City Council to file an *amicus* brief.

**6.** If plaintiff has standing, then it is the "real party in interest" for purposes of Fed.R.Civ.P. 17(a). *See Bass v. Campagnone*, 655 F.Supp. 1390, 1392 (D.R.I.1987), *aff'd*, 838 F.2d 10 (1st Cir.1988).

**7.** If the court were to address that question, it would find that GBCC has alleged sufficient injury to confer standing upon it. This injury is twofold: injury as an employer and injury to its efforts in fulfilling its objectives and recruiting new members. The first injury is akin to the

injury its members suffer, as discussed in the text. The injury to GBCC in its own organizational efforts is also sufficient to meet the standing requirement. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982) (defendant's racial "steering" impaired association's ability to provide counseling services); *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 345, 97 S.Ct. 2434, 2442, 53 L.Ed.2d 383 (1977) (financial nexus between association's commissions and challenged statute assures adversarial presentation of issues).

cesses of the national labor laws to the injury of employers.[8]

The City Council, as *amicus*, suggests that plaintiff's demonstration of injury is insufficient, because any imbalance in the respective powers of management and labor is only hypothetical. The City Council would require that plaintiff show a threat of enforcement of the Ordinance against its members, or their intention to engage in the proscribed conduct (i.e., hiring replacement workers during a strike).

In essence, the City Council argues that the case is not ripe for judicial resolution. But in so arguing, the City Council does not give sufficient weight to the considerations embodied in the federal laws that regulate collective bargaining and labor disputes. The Ordinance could be interpreted as imposing an automatic penalty whenever an employer hires a strikebreaker. If so, it would inflict a present injury on any employer who engages in collective bargaining and who is subject to a strike. In the context of congressionally balanced labor relations, that potential injury is not hypothetical or speculative. *See Machinists & Aerospace Workers*, 427 U.S. at 147, 96 S.Ct. at 2556. *See also Clements v. Fashing*, 457 U.S. 957, 962, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) (automatic application of statute sufficient to satisfy requirement of present controversy).

A court need not await the contingency of a strike to address this issue. A strike, or the threat of one, would not significantly advance the court's ability to deal with the legal question presented in the complaint. *See Duke Power v. Carolina Envtl. Study Group*, 438 U.S. 59, 81–82, 98 S.Ct. 2620, 2634–35, 57 L.Ed.2d 595 (1978) (challenge to statute limiting liability of nuclear power facilities in event of nuclear accident does not have to attend accident). Indeed, a delay in adjudication would adversely affect both parties—the GBCC, who claims present and long-term injury to its members, and the City, which awaits a ruling on

the constitutional validity of its Ordinance. *See id.* at 82, 98 S.Ct. at 2635.

As for the requirement that the suit be germane to the GBCC's purposes, GBCC's by-laws provide that its mission includes promoting the interests of Boston's businesses. Charter and By–Laws of the GBCC at § 1. Regardless of its outcome, this suit is consistent with that mission.

The final issue related to standing is whether GBCC's members must participate. The City Council avers that, unless individual businesses contribute to the record, the court cannot properly resolve this case.

The court's decision does not require individualized proof of harm, and the court may appropriately grant GBCC relief in the group context. *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 344, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). This is so because the Ordinance affects all GBCC's members, and also because the court is asked to decide the legal question of whether the Ordinance is, as it reads, preempted by federal laws.

## B.

### *Case or Controversy*

The constitutional "case or controversy" requirement is related to the issue of standing. In order for a "case or controversy" to come before the court, the plaintiff must allege an injury traceable to defendant. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976). The GBCC, in challenging Boston's Ordinance as injurious to its interests, presents such a controversy.

Having determined that GBCC's complaint presents a justiciable controversy, this court now addresses the pending motions.

---

**8.** Plaintiff has submitted an affidavit from the managing director of labor relations of its member, New England Telephone (NET), who affirms that if the Ordinance applied to NET, NET could not use a standard tactic in labor negotiations and would thereby suffer, even if there were no strike. *See* Ciasullo Aff. ¶ 6.

### C.

### *Pending Motions*

■ The City moved to dismiss the action on the ground that the City Council had not been joined as a party. The City argued that the City Council was indispensable, as only it was interested in defending the Ordinance. The Council moved to intervene in June 1991. Allowance of the Council's motion to intervene would moot the City's motion to dismiss.

The GBCC opposes the City Council's intervention on two grounds. First, it claims that the City already adequately represents the City Council's interest. Second, the GBCC claims that the Council's motion to intervene is untimely.

The GBCC's assertion that the City adequately represents the Council's interest in defending the Ordinance cannot withstand the City's own admission, through the Corporation Counsel, that the City Council is an indispensable party. The City Council, as the City's legislative body, has an interest in knowing whether an Ordinance it enacted is constitutional. The City Code authorizes the Council, in circumstances where its interests are distinct from the Mayor's, to retain independent counsel. Boston, Mass., Code § 5–8.1 (1979).

■ The inquiry into the timeliness of the Council's motion considers 1) the promptness of the motion, 2) prejudice to existing parties, 3) prejudice to the prospective intervenor, and 4) unusual circumstances. *Caterino v. Barry*, 922 F.2d 37, 40–43 (1st Cir.1990).

Within two weeks of commencement of this action in October 1990, the City Council authorized William Kunstler to defend the Ordinance on its behalf and to intervene in this suit. Rather than move to intervene, Kunstler filed, on November 5, 1990, an "answer" of the City of Boston. The City responded the following day with its motion to dismiss. The Council did not file a motion to intervene until June 1991, prompted, apparently, by the May filing of the parties' motion for entry of judgment.

Although it may fairly be said that the City Council delayed its intervention—perhaps in misplaced reliance on its "answer"—the resultant prejudice to the parties is not significant. Their settlement is off. Discovery, which terminated because of the putative settlement, can reopen. Of course, the failure of the settlement subjects the plaintiff to the potential of continuing injury that its complaint alleges. But this court will not allow the parties to "stipulate," as they do in their settlement, to the unconstitutionality of an Ordinance.

Intervention is proper. The fact that the Corporation Counsel objects to the Ordinance on constitutional grounds and, therefore, may not be able to defend it in good conscience, creates an unusual circumstance militating in favor of the intervention of a proper party that can and will litigate the issue.

### II.

For all the foregoing reasons, the defendants' Motion to Dismiss is hereby DENIED, the Joint Motion for Entry of Judgment is DENIED without prejudice, pending resolution on the merits, and the City Council's Motion for Leave to Intervene is ALLOWED.