**EMPLOYERS ASSOCIATION, INC.**

v.

**UNITED STEELWORKERS OF AMERICA.**

**Civ. No. 4–91–947.**

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 5, 1992.

Nunc Pro Tunc Oct. 1, 1992.

Mark B. Rotenberg, Dorsey & Whitney, Minneapolis, Minn., for plaintiff.

Scott Adams Higbee, Peterson, Engberg & Peterson, Minneapolis, Minn., for defendant.

Alec J. Beck and Robert Stephen Halagan, Felhaber, Larson, Fenlon & Vogt, Minneapolis, Minn., for Minnesota Chamber of Commerce and Labor Policy Ass'n (amici).

Scott R. Strand, Minnesota Atty. Gen.'s Office, St. Paul, Minn., for State of Minn. (intervenor).

## AMENDED ORDER

ROSENBAUM, District Judge.

Minnesota's Striker Replacement Law, Minn.Stat. § 179.12(9) ("Striker Replacement Law" or "Act"), makes it an unfair labor practice, and an unlawful act, for an employer to hire, or threaten to hire, permanent replacement workers in the event of a lockout by an employer or during a strike by employees. The plaintiff claims that the Act is preempted by federal labor law, and therefore contravenes the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2.

Before the Court are plaintiff's motion for summary judgment and defendant's cross motion for dismissal.[1] The plaintiff

---

1. Matters outside the pleadings have been presented to, and considered by, the Court. Accordingly, defendant's motion is considered as a motion for summary judgment, pursuant to Rules 12(b) and 56(c), Federal Rules of Civil

seeks a declaratory judgment finding Minnesota's Striker Replacement Law unconstitutional. The defendant contends that there is no justiciable case or controversy between the parties and, as a result, this Court lacks jurisdiction.

Briefs were submitted, and oral argument was heard on June 25, 1992. For the reasons set forth below, the Court finds that this case presents a justiciable controversy. The Court further holds that Minnesota's Striker Replacement Law is preempted by federal labor law. As a result, the Court finds the Act unconstitutional under the Supremacy Clause.

### Background

Plaintiff Employers Association, Inc. ("the Association"), is a Minnesota-incorporated membership organization consisting of more than 1,250 Minnesota employers. The Association provides labor relations specialists who assist over 200 of its members in the collective bargaining process throughout Minnesota. (Rinne Aff. ¶¶ 1–3). The Association and its member employers are "employers" as defined by the National Labor Relations Act (NLRA), 29 U.S.C. § 152(2), and the Minnesota Labor

Relations Act (MLRA), Minn.Stat. § 179.-01(3).

Defendant United Steelworkers of America ("USWA" or "Union") is a labor organization, as defined by the NLRA, 29 U.S.C. § 152(5), and the MLRA, Minn.Stat. § 179.-01(6). The USWA is the exclusive bargaining representative of, and has bargained for, a number of plaintiff's members' employees.[2] Notwithstanding the USWA's protestations to the contrary, there is no question that these parties will negotiate in the future.[3]

The State of Minnesota ("the State") has intervened in this action to defend the constitutionality of the Striker Replacement Law, pursuant to Rule 24(a), Federal Rules of Civil Procedure (Fed.R.Civ.P.).[4]

### Analysis

#### A. The Striker Replacement Law

The striker replacement bill was passed by the 1991 Minnesota State legislature as an amendment to the Minnesota Labor Relations Act, Minn.Stat. §§ 179.01–179.17.[5] The Striker Replacement Law provides:

> It is an unfair labor practice for an employer . . .

Procedure. *Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir.1992).

**2.** As an example, the Association has represented Northern Hydraulics, Inc. ("Northern Hydraulics"), in collective bargaining with the USWA. (Christensen Aff.; Ex. A Ans. to Interrog. 6, 7, 9). The contract between Northern Hydraulics and the Union expired on September 13, 1991. Employers Association specialist Len Grannes engaged in negotiations with the Union on behalf of Northern Hydraulics. At the time, Union members were engaged in informational picketing of the Northern Hydraulics facility.

On or about September 30, 1991, during one of the negotiation sessions, Grannes informed the Union that Northern Hydraulics would take all lawful steps to continue its operation in the event of a strike. The Union's representative responded that Northern Hydraulics could not hire permanent replacement workers because such an action would violate the Striker Replacement Law. (Skraba Aff. ¶ 11; Pascuzzi Aff. ¶ 9). Subsequently, in a letter, dated October 1, 1991, Northern Hydraulics advised its employees that it would hire permanent replacement workers in the event of a strike.

On December 12, 1991, after further negotiations, Northern Hydraulics and the Union entered into a formal agreement which settled

their labor dispute. A formal strike was never called.

**3.** The Association has provided collective bargaining assistance to the following member employers, whose employees are represented by the USWA: Anderson Custom Processing, Inc.; Canco Employees Credit Union; Cannon Equipment Co.; Circuit Science, Inc.; Commercial Steel Fabricators, Inc.; Elston Equipment Co.; Enderes Tool Company, Inc.; Glenmac, Inc.; IMI Cornelius Company; Lewis Engineering Company; Northern Hydraulics, Inc.; Northern Iron Corporation; RSP Plating, Inc.; and Stevens Lee Company. (Christensen Aff., Ex. A at Interrog. No. 5(b); Rinne Suppl. Aff., ¶ 2). This Court agrees with the Association's reasonable prediction that it will engage in collective bargaining with the USWA in the foreseeable future.

**4.** Additional amicus briefs have been submitted on behalf of the Minnesota Chamber of Commerce and the Labor Policy Association.

**5.** The Ramsey County District Court held that a gubernatorial veto of the Act was invalid. *See The Seventy-seventh Minnesota State Senate v. Carlson,* No. C3–91–7547 (Memorandum Order) (1991).

(9) To grant or offer to grant the status of permanent replacement employee to a person for performing bargaining unit work for an employer during a lockout of employees in a labor organization or during a strike of employees in a labor organization authorized by a representative of employees....

Minn.Stat. § 179.12(9) (1991).

■ Under the terms of the Act, if an employer hires or threatens to hire permanent replacement workers, a union may seek a temporary or permanent injunction in state court to enjoin the unfair labor practice. *Id.* § 179.14. An employer who violates the Striker Replacement Law is then precluded from exercising its own remedies which would otherwise be available under the MLRA. These remedies include the right to bring an injunction action in state court with respect to matters arising out of a labor dispute. *Id.* § 179.15.[6]

B. *Justiciability*

Plaintiff seeks a declaratory judgment that the Striker Replacement Law is preempted by federal labor law, as defined by the Supreme Court in *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 146, 96 S.Ct. 2548, 2556, 49 L.Ed.2d 396 (1976) ("*Machinists*"), and *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) ("*Garmon*").

Both the USWA and the State seek dismissal, pursuant to Rule 12(b)(1), Fed. R.Civ.P. Each contends that no justiciable case or controversy exists between the parties and, consequently, this Court lacks subject matter jurisdiction. In the alternative, defendants urge this Court to abstain because this issue is now pending before the Minnesota Court of Appeals.[7]

■ The relevant provision of the Declaratory Judgement Act states:

In a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration.

28 U.S.C. § 2201 (1992). The decision to grant a declaratory judgment lies within the sound discretion of the Court. *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962). But, before the Court may exercise this discretion, the plaintiff must satisfy the statute's jurisdictional requirements. The plaintiff must first demonstrate the Court's independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *Collin County, Texas v. Home-*

---

6. The Act also declares that a violation of the Striker Replacement Law is an "unlawful act" under the MLRA. *Id.* § 179.12(10). At oral argument, the parties disputed the significance of this fact. The State argued that the term "unlawful act" is synonymous with "unfair labor practice" and § 179.12(10) is without independent legal significance.

The Court rejects the State's argument. The legislature was careful to define a violation of the Striker Replacement Law as both an unfair labor practice, § 179.12, and an unlawful act. § 179.12(10). Under Minnesota's rules of statutory construction, a court must construe "[e]very law ... if possible, to give effect to all its provisions.... [T]he letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16. In light of this rule, the Court cannot presume, as the State suggests, that this enactment, making the hiring of striker replacements an "unlawful act," is a legislative nullity.

In further support of this view, the Court considers Minnesota Statutes, § 645.241. This section declares that any act prohibited by statute is a misdemeanor, where no specific penalty for the violation is imposed. The violation of the Striker Replacement Law could well result in a misdemeanor prosecution under the Criminal Code of 1963, Minn.Stat. § 609.01, *et seq.* *See* Minn.Stat. § 609.015(2) (1987).

7. See *Midwest Motor Express v. International Brotherhood of Teamsters,* Ramsey County District Court File Nos. CO–91–11037 and C8–91–9715, 1992 WL 296760 (Memorandum Opinion, February 25, 1992). The Court recognizes that the Honorable Lawrence D. Cohen of the Ramsey County District Court has found the strikebreakers' law to be constitutional. This decision is now on appeal before the Minnesota Court of Appeals, File No. C6–92–1126. Defendant's abstention argument will be addressed in Section C, *infra.*

*owners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 170 (5th Cir.1990); Wright Miller & Kane, *Federal Practice & Procedure* § 2766 (1983 & supp.1991). Second, the plaintiff must demonstrate the existence of an actual controversy between the parties. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937).

No party challenges this Court's independent subject matter jurisdiction. It is clear that federal question jurisdiction, arising under § 151 of the NLRA and the United States Constitution, satisfies the first requirement of the Declaratory Judgment Act. The defendant, however, denies that there is an actual controversy which is ripe for resolution.

■ The "actual controversy" requirement of § 2201 is synonymous with the constitutional requirement of Article III, § 2, limiting the jurisdiction of this Court to "cases" and "controversies". *Steffel v. Thompson*, 415 U.S. 452, 458, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). "The basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Babitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945), and citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). "The difference between an abstract question, and a 'controversy' ... is necessarily one of degree...." *Maryland Casualty*, 312 U.S. at 273, 61 S.Ct. at 512.

In the USWA's view, the plaintiff has failed to satisfy the justiciability requirement, as delineated in *Babitt* and *Maryland Casualty*. It is the USWA's position that any case or controversy which existed as a result of the labor negotiations between Northern Hydraulics and the Union is now moot. Further, the USWA suggests that the actual controversy requirement is not satisfied by consideration of future negotiations, which might lead to invocation of the Striker Replacement Law. Finally, the USWA claims that if any controversy does exist, it is not of "sufficient immediacy" to satisfy the ripeness requirement. Both the USWA and the State argue that a judgment entered at this time would constitute an impermissible advisory opinion.

■ "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." *Renne v. Geary*, —— U.S. ——, ——, 111 S.Ct. 2331, 2336, 115 L.Ed.2d 288 (1991); 13A Wright, Miller & Cooper, *Federal Practice & Procedure* § 3532 (1983 & supp.1992). The ripeness doctrine requires this Court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■ The Court finds that an actual and justiciable controversy exists in this case. The enactment of the Striker Replacement Law has materially altered the Congressionally defined equilibrium which exists between management and organized labor in collective bargaining negotiations. It is this alteration which gives rise to a justiciable controversy.

It is settled that one of the economic weapons available to an employer is the right to hire permanent replacement workers in the event of an economic strike. *Belknap, Inc. v. Hale*, 463 U.S. 491, 500, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983); *NLRB v. MacKay Radio & Telegraph Co.*, 304 U.S. 333, 347, 58 S.Ct. 904, 911, 82 L.Ed. 1381 (1938). "The presence of economic weapons *in reserve* and their actual exercise on occasion by the parties, is part and parcel of the system that the Wagner and Taft Hartley Acts have recognized." *NLRB v. Insurance Agents' Int'l Union, AFL–CIO*, 361 U.S. 477, 489, 80 S.Ct. 419, 427, 4 L.Ed.2d 454 (1960) (emphasis added). The enactment of the Striker Replacement Law has removed this weapon from the plaintiff's bargaining arsenal, affecting the

subtle balance established by Congress. This subtle but substantial shift in bargaining positions is neither hypothetical nor abstract. *See Greater Boston Chamber of Commerce v. City of Boston,* 772 F.Supp. 696, 699 (D.Mass.1991). This material alteration of the collective bargaining relationship obviates any need to await a strike and actual invocation of the law. *See Metropolitan Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.,* —— U.S. ——, —— n. 13, 111 S.Ct. 2298, 2306 n. 13, 115 L.Ed.2d 236 (1991); *Duke Power v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 81–82, 98 S.Ct. 2620, 2634–35, 57 L.Ed.2d 595 (1978); *Greater Boston,* 772 F.Supp. at 699.

The Court also determines that further development of the factual record would be of little assistance. Whether or not Minnesota's Striker Replacement Law is preempted by federal labor law is purely a question of law. Where the issue before the Court is purely a question of law, the Court is not required to await further development of a factual record. *See Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752 (1983); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). Accordingly, the Court finds that a justiciable controversy exists, and that this Court has subject matter jurisdiction.

## C. *Abstention*

▇▇▇▇ Defendant has suggested that this Court abstain from issuing a declaratory judgment, because the constitutionality of the Act is presently before the Minnesota Court of Appeals. Defendant contends that the state court case, having progressed to the appellate stage, provides a better framework in which to review the Act. This Court does not agree. A prior pending state court action is only one factor this Court is to consider in granting declaratory relief. *State Farm Mut. Auto. Ins. Co. v.*

*Bonwell,* 248 F.2d 862 (8th Cir.1957). This Court finds that an important question of federal law is presented in this case. As discussed below, the Striker Replacement Law cannot be construed to avoid the preemption issue. Accordingly, adjudication at this time, in this forum, is appropriate.

## D. *Preemption*

▇▇▇▇ The Supreme Court has enunciated two distinct preemption principles which define the "broadly pre-emptive scope of the NLRA...." *Int'l Longshoremen's Ass'n, AFL–CIO v. Davis,* 476 U.S. 380, 389, 106 S.Ct. 1904, 1911, 90 L.Ed.2d 389 (1986). Under the first of these preemption principles, states are prohibited from regulating any "activity that the NLRA protects, prohibits or arguably protects or prohibits." *Garmon,* 359 U.S. at 236, 79 S.Ct. at 773.[8] Under this so-called *Garmon* preemption principle, state law regulating conduct which is arguably protected or prohibited by the NLRA "must yield to the exclusive primary competence of the [National Labor Relations] Board" (NLRB). *Id.* at 245, 79 S.Ct. at 779. "The *Garmon* rule is intended to preclude state interference with the NLRB's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA." *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 613, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1989).

The *Garmon* court also articulated two limited exceptions to the broadly preemptive power of the NLRA. Under these exceptions, states may regulate activity which is only a "peripheral concern" of the NLRA, or they may regulate activity which "touch[es] interests ... deeply rooted in local feeling and responsibility." *Garmon,* 359 U.S. at 243–244, 79 S.Ct. at 778–79.

In contrast to the *Garmon* rule, which prevents diminution of the NLRB's authority, the second preemption principle, the so-called *Machinists* rule, concerns those areas which Congress intended to leave "un-

---

8. Clearly, where state law regulates conduct which is actually protected or prohibited by federal labor law, such direct conflict will result in preemption of the state law. *Brown v. Hotel*

*& Restaurant Employees & Bartenders,* 468 U.S. 491, 503, 104 S.Ct. 3179, 3186, 82 L.Ed.2d 373 (1984).

restricted by *any* governmental power to regulate." *Machinists*, 427 U.S. at 140, 96 S.Ct. at 2553 (emphasis in original) (quoting *NLRB v. Insurance Agents Int'l Union, AFL–CIO*, 361 U.S. 477, 488, 80 S.Ct. 419, 426, 4 L.Ed.2d 454 (1960)). When it enacted the NLRA, Congress necessarily chose to regulate some aspects of labor activities and to leave others "to be controlled by the free play of economic forces." *NLRB v. Nash–Finch Co.*, 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971). *See also Weber v. Anheuser–Busch, Inc.*, 348 U.S. 468, 480, 75 S.Ct. 480, 487, 99 L.Ed. 546 (1955). Under this preemption principle, states are prohibited from regulating the self-help, economic weapons which fall into the "area of labor combat." *Machinists*, 427 U.S. at 146, 96 S.Ct. at 2556 (quoting *Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776*, 346 U.S. 485, 500, 74 S.Ct. 161, 171, 98 L.Ed. 228 (1953)). "Congress meant that these activities, whether of employer or employees, were not to be regulable by States any more than by the NLRB...." *Id.* 427 U.S. at 149, 96 S.Ct. at 2557. "[B]oth [the NLRB and the States] are without authority to attempt to 'introduce some standard of properly balanced bargaining power' ... or to define 'what economic sanctions might be permitted negotiating parties in an "ideal" or "balanced" state of collective bargaining.' " *Machinists*, 427 U.S. at 150, 96 S.Ct. at 2558 (quoting *Insurance Agents*, 361 U.S. at 497 & 500, 80 S.Ct. at 431 & 433).

Congress's prohibition of specific economic weapons, and concomitant unwillingness to regulate others, was interpreted by the *Machinists* court as an intentional balancing of the conflicting interests of the union, the employees, the employer, and the community. The *Machinists* court concluded that "the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the Act's processes." *Id.* at 148, 96 S.Ct. at 2557 (quoting *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 380, 89 S.Ct. 1109, 1116, 22 L.Ed.2d 344 (1969)).

Plaintiff contends that the Striker Replacement Law raises preemption issues under both *Machinists* and *Garmon*. Plaintiff then argues that the Act cannot be upheld under *Garmon*'s "local interest" exception. In response, the defendant argues that neither *Garmon* nor *Machinists* is applicable. Rather, the defendant urges the Court to apply a few recent Supreme Court holdings which, in its view, disclose a strong presumption against federal preemption.

The State then advances the novel argument that the Act falls within *Garmon*'s "local interest" exception because it actually regulates the legal relationship between the permanent replacement workers and their employers. For this proposition, the State relies upon *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987); and *Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983). Finally, the USWA argues that the Act falls within the "local interest exception" because the law was primarily intended to abate picket line violence. The USWA cites portions of the Act's legislative history to support the contention that the law was passed to address Minnesota's concern with strike-related misconduct and violence.

At the outset, the Court declines to follow the non-labor law cases which disfavor implied federal preemption of state laws. *See Wisconsin Public Intervenor v. Mortier*, — U.S. —, —, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991); *Gregory v. Ashcroft*, — U.S. —, —, 111 S.Ct. 2395, 2401, 115 L.Ed.2d 410 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989). These cases are wholly inapposite in the context of federal labor law. The Supreme Court has reiterated, on numerous occasions, that the doctrines set forth in *Machinists* and *Garmon* comprise the universe of NLRA preemption principles. *See, e.g., Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 613–614,

106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1986); *Belknap*, 463 U.S. at 498–499, 103 S.Ct. at 3177. In the sphere of federal labor law, the theory of implied federal preemption is very much alive. Accordingly, this Court applies the *Machinists* and *Garmon* preemption principles. The defendant's and intervenors' other arguments will be discussed below.

#### E. *The Constitutionality of the Act*

The Court finds that Minnesota's Striker Replacement Law, Minn.Stat. § 179.12(9), is unconstitutional under the *Machinists* preemption doctrine.

It is well-established federal labor law that an employer may hire permanent replacement workers during an economic strike by employees. *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants*, 489 U.S. 426, 432–33, 109 S.Ct. 1225, 1230, 103 L.Ed.2d 456 (1989); *Belknap*, 463 U.S. at 500, 103 S.Ct. at 3177; *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 232, 83 S.Ct. 1139, 1147, 10 L.Ed.2d 308 (1963); *MacKay Radio*, 304 U.S. at 333, 58 S.Ct. at 904.[9] Minnesota's Striker Replacement Law flatly prohibits the employer's exercise of this well-established right by making the actual hiring of permanent replacements, or even the threat of doing so, an unfair labor practice under the MLRA. *See* Minn.Stat. § 179.14 (the union may seek injunctive relief whenever an unfair labor practice is "threatened or committed").

The Act, then, forbids actions which federal labor law clearly permit. Therefore, the Court finds that the Striker Replacement Law is contrary to federal labor law and is preempted. The Act seeks to deny to an employer its protected right to "resort to economic weapons should more peaceful measures not avail." *Machinists*,

427 U.S. at 147, 96 S.Ct. at 2556 (quoting *American Ship Bldg. Co. v. NLRB*, 380 U.S. 300, 317, 85 S.Ct. 955, 966, 13 L.Ed.2d 855 (1965)). Because the Striker Replacement Law "add[s] to an employer's federal legal obligations in collective bargaining," the law is unconstitutional under the *Machinists* preemption doctrine. *Machinists*, 427 U.S. at 147, 96 S.Ct. at 2556.

The Court recognizes that it must, if possible, construe statutes so as to avoid constitutional questions. *R.A.V. v. City of St. Paul, Minnesota*, —— U.S. ——, ——, 112 S.Ct. 2538, 2558, 120 L.Ed.2d 305 (1992); *New York v. U.S.*, —— U.S. ——, ——, 112 S.Ct. 2408, 2425, 120 L.Ed.2d 120 (1992); *Communication Workers of America v. Beck*, 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988). This course has been suggested by the defendant. The USWA, at oral argument, urged the Court to find an ambiguity in the Act's use of the word "permanent." The defendant and intervenor advanced the theory that "permanent" somehow relates only to the job security of replacement workers. Counsel for the Union acknowledged that this would not be "the most natural reading" of the statute. The Court is unconvinced.

The term "permanent replacement" has been a term of art in the labor law field for over fifty years. *See, e.g., TWA*, 489 U.S. at 432–33, 109 S.Ct. at 1230; *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 379, 88 S.Ct. 543, 546, 19 L.Ed.2d 614 (1967); *MacKay Radio*, 304 U.S. at 343, 58 S.Ct. at 909. To the Court's observation, it has consistently referred to the hiring of workers to replace economic strikers. The legislative history of the Striker Replacement Law cited by the defendant makes clear the Minnesota legislature's intent to use the term in this well-understood sense.[10]

---

**9.** The State has advanced the thesis that the underlying rationale of *NLRB v. MacKay Radio & Telegraph Co.*, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938), the first case to permit the hiring of permanent replacement workers, is in error. The State then suggests that this error has compounded itself over 50 years of Supreme Court precedent. (Memorandum of State of Minnesota in Opp. to Motion for Summary Judgment at p. 5 n. 2). Notwithstanding

the academic theory suggesting "this error," this Court will follow *MacKay Radio* and its unvarying progeny.

**10.** Representative Anderson, the chief author of the bill, stated, "I also think that it [the law] is a safety measure because in many instances when employees go on strike ... the employer advertises that their replacements are permanent replacements ... and causes great turmoil on the

There is no indication in the language of the statute, or in any legislative history presented to the Court, that the law was intended to regulate only the relationship between the striker replacements and the employer. The Court declines this invitation to engage in a tortured reading of the Act's plain language.

Curiously, the plaintiff has suggested a construction which, at first blush, appears to save the law from preemption. On further consideration, this reading, too, leads to federal preemption, but under the *Garmon* principle. In this context, the plaintiff correctly points out that the Striker Replacement Law makes no distinction between hiring permanent replacements in the event of an "economic" as opposed to an "unfair labor practice" strike. As seen above, hiring permanent replacements in an economic strike has been permitted for over 50 years. This must be contrasted with hiring permanent replacements when employees strike in response to an employer's unfair labor practice. Permanently replacing strikers in this context is prohibited. *Belknap,* 463 U.S. at 508, 103 S.Ct. at 3182; *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956); *Lapham–Hickey Steel Corp. v. NLRB,* 904 F.2d 1180, 1187 (7th Cir.1990).

If the Striker Replacement Law were to be construed to prohibit only the hiring of permanent replacements in the event of an unfair labor practice strike, it would seem that there is no conflict. On its face, the Act simply restates well-settled federal labor law. There is, however, a fatal flaw in this analysis—the declaration of an unfair labor practice is delegated to the NLRB. 29 U.S.C. § 160(a); *Hammontree v. N.L.R.B.,* 925 F.2d 1486, 1491–92 (D.C.Cir. 1991) ("no one other than the Board shall diminish the Board's authority over unfair labor practice claims"). Under *Garmon,* therefore, the State of Minnesota is not permitted to regulate the hiring of permanent replacements, even in the event of an unfair labor practice strike, because issues arising in such a strike are subject to the primary jurisdiction of the NLRB.

Finally, the Court rejects the two arguments advanced by the State and the USWA that the Striker Replacement Law falls into the "local interest" exception. The State argues, first, that, since *Machinists,* the Court has carved out an area between individual employees and the employer where a state may engage in labor regulation. *See Malone v. White Motor Co.,* 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987); *Belknap,* 463 U.S. at 491, 103 S.Ct. at 3172. Secondly, the USWA contends that the "local interest" exception established in *Garmon* directly applies because Minnesota has a compelling state interest in preventing strike-related misconduct and violence. In its view, this compelling state interest arises when strikers face the loss of their jobs to permanent replacement workers. The Court addresses each argument in turn.

First, the Court cannot find that the Striker Replacement Law was intended to regulate the relationship between the individual employees and the employer. The present case is clearly distinguishable from those cited by the State. In *Malone,* the Court held that Minnesota's Private Pension Benefit Protection Act was not preempted by the NLRA. 435 U.S. at 512, 98 S.Ct. at 1194. The Court found that Congress did not intend to remove bargained-for pension plans from substantive state or federal regulation. *Id.* In *Metropolitan Life,* the Court found no preemption of a Massachusetts statute which required that minimum mental health benefits be provided under certain health insurance policies. 471 U.S. at 758, 105 S.Ct. at 2399. In *Fort Halifax,* the Court held that the NLRA did not preempt a Maine statute which required employers to provide their employees with a one-time severance pay-

strike line." (Testimony before the House Labor Management Relations Committee, February 25, 1991).

ment in the event of a plant closing. 482 U.S. at 23, 107 S.Ct. at 2223–24. In all three cases, the Court reasoned that Congress did not intend to exclude unionized workers from receiving the substantive benefits of a state's minimum labor standards. *Malone*, 435 U.S. at 512, 98 S.Ct. at 1193–94; *Metropolitan Life*, 471 U.S. at 755, 105 S.Ct. at 2397; *Fort Halifax*, 482 U.S. at 21, 107 S.Ct. at 2222. This Court, granting a full and fair reading to Minnesota's Striker Replacement Law, cannot find that this law is designed to address minimum labor standards and state-regulated benefits.

The Court further finds that the precepts underlying *Belknap*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), are inapplicable. In *Belknap*, the Court held that the NLRA did not preempt a state court action brought by permanent strike replacements for misrepresentation and breach of contract. *Id.* at 501, 103 S.Ct. at 3178. The permanent replacements sued when they were displaced to accommodate returning strikers. *Id.* at 498, 103 S.Ct. at 3177. The Court reasoned that permitting the state court action would not interfere with the carefully balanced relationship between the union and the employer but, rather, would serve to protect the rights of innocent third parties. *Id.* at 501, 103 S.Ct. at 3178. This Court has already rejected the State's argument that the Minnesota Striker Replacement Law is directed toward the relationship between permanent replacements and the employer. The Act directly regulates the relationship between union members and the employer. This case, therefore, is clearly distinguishable from *Belknap*, which concerned the employer's relationship to third parties. In sum, the Court cannot construe the Striker Replacement Law so that it falls into those narrowly defined areas of state regulation which lie beyond the *Machinists* doctrine.

Similarly, the Court rejects the USWA's argument that the law falls within the *Garmon* "local interest" exception. The USWA contends that the State has a legitimate interest in preventing picket-line violence and promoting peaceful strike settlements, citing *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957). The legislative history makes clear that the Act was motivated, at least in part, by precisely this interest.[11] The Court, of course, does not oppose such a goal.

The Court, however, cannot uphold the means by which the State has attempted to achieve this laudable purpose. The Striker Replacement Law does not selectively address the right of an employee, an employer, or the State to redress picket line violence. *See Youngdahl*, 355 U.S. at 139, 78 S.Ct. at 211 (employer entitled to enjoin picket line violence, but may not enjoin peaceful picketing); *Int'l Union, United Auto., Aircraft & Agricultural Implement Workers of America (UAW–CIO) v. Russell*, 356 U.S. 634, 642, 78 S.Ct. 932, 937, 2 L.Ed.2d 1030 (1958) (non-union employee may recover damages caused by tortious conduct of union strikers on picket line). Instead, the State's blanket prohibition of hiring permanent striker replacements directly interferes with an employer's federally protected right to do so. *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters*, 436 U.S. 180, 196, 98 S.Ct. 1745, 1757, 56 L.Ed.2d 209 (1978). The State's attempt to avoid picket line violence by a blunderbuss prohibition of a practice which has been protected by over fifty years of Supreme Court precedent cannot stand. This is not a State adjustment of a locally sensitive relationship. It is instead a reweaving of a critical thread in the fabric of labor-management relations. Under the broadly preemptive power of the NLRA, the State is simply without authority to introduce its own standard of "properly balanced bargaining power."

---

11. "What this bill deals with is promoting some peaceful resolve to these issues, because what happened at the Hormel, for example, in Austin, and the Greyhound Bus strike. A lot of violence happens because the workers are informed they have been permanently replaced, and that's a very big issue." (Remarks of Senator Chmielewski before the Minnesota Senate Employment Committee, March 25, 1991.) *See also* Comments of Representative Anderson, *supra* n. 10.

*Machinists,* 427 U.S. at 149–150, 96 S.Ct. at 2557–58. While Minnesota is certainly entitled to be concerned over picket line safety, this concern is too generalized to permit the State to unilaterally redefine federal labor law.

Based upon the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

1. The motion of defendant USWA and the State of Minnesota to dismiss this action for lack of subject matter jurisdiction is denied.

2. Plaintiff's motion for summary judgment, seeking a declaratory judgment finding Minnesota's Striker Replacement Law unconstitutional, is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.