EMPLOYERS ASSOCIATION, INC., for
Itself and on Behalf of its Member
Employers, Appellee,

v.

UNITED STEELWORKERS OF
AMERICA, AFL–CIO–CLC,
Appellant,

State of Minnesota, Intervenor.

EMPLOYERS ASSOCIATION, INC., for
Itself and on Behalf of Its Member
Employers, Appellee,

v.

UNITED STEELWORKERS OF
AMERICA, AFL–CIO–CLC,
Defendant,

State of Minnesota, Intervenor/Appellant.

Nos. 92–3636, 92–3641.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1993.

Decided March 18, 1994.

Scott R. Strand, St. Paul, MN, argued
(Michael J. Vanselow, John G. Engberg and
Scott A. Higbe, on the briefs), for appellant.

Mark B. Rotenberg, Minneapolis, MN, argued (Michael J. Wahoske and James H.
Curtin, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief
Judge, McMILLIAN and HANSEN, Circuit
Judges.

RICHARD S. ARNOLD, Chief Judge.

On behalf of itself and its members, plaintiff Employers Association challenged the validity of the Minnesota Striker Replacement
Law, Minn.Stat. § 179.12(9) (1993).[1]   The
Striker Replacement Law declares it an unfair labor practice for employers to hire permanent replacement employees during a

---

1. The statute is also known as the Picket Line
Peace Act.  See LeRoy, *The Mackay Radio Doctrine of Permanent Striker Replacements and the*  *Minnesota Picket Line Peace Act:  Questions of Preemption,* 77 Minn.L.Rev. 843 (1993).

strike or lockout. The plaintiff argued that the Striker Replacement Law was preempted by the National Labor Relations Act (NLRA). The defendant, the United Steelworkers of America (USWA), and the intervenor, the State of Minnesota,[2] responded that, as between the parties to the suit, there was no dispute ripe for judicial resolution. Moreover, the USWA and the State (collectively, "the defendants") urged the District Court to abstain in favor of already pending litigation between different parties in the Minnesota courts, in which the construction, and possible pre-emption, of the Striker Replacement Law were at issue. On the merits, the defendants contended that the state legislation was not pre-empted by federal labor law.

In an opinion ruling on the parties' cross-motions for summary judgment, the District Court held that there was a ripe dispute between the Association and the USWA, and that there was no need to abstain. *Employers Association, Inc. v. United Steelworkers of America*, 803 F.Supp. 1558, 1563 (D.Minn. 1992). Additionally, the Court held that the Minnesota statute was unconstitutional because it was pre-empted by federal labor law under the doctrine of *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). 803 F.Supp. at 1565–68. We conclude that federal courts should abstain from further action in this case pending the decision of the Minnesota Supreme Court in *Midwest Motor Express v. International Brotherhood of Teamsters, Local 120* (No. C6–92–1126) (petition for review granted, March 16, 1993).

## I.

The challenged statute, an amendment to the Minnesota Labor Relations Act (MLRA), was passed by the Minnesota Legislature during the summer of 1991.[3] It declares that it is an unfair labor practice for an employer:

> [t]o grant or offer to grant the status of permanent replacement employee to a person for performing bargaining unit work for an employer during a lockout of employees in a labor organization or during a strike of employees in a labor organization authorized by a representative of employees.

Minn.Stat. § 179.12(9) (1993). Under Minnesota law, state courts are authorized to grant injunctive relief when any unfair labor practice is "threatened or committed." § 179.14. Furthermore, commission of an unfair labor practice diminishes the violator's recourse to injunctive remedies otherwise available under the MLRA. § 179.15.[4]

The Association's test of this legislation arose from a series of negotiations, beginning September 16, 1991, between one of its members, Northern Hydraulics, and the USWA. At one point during discussions between the two sides, Northern Hydraulics, represented by one of the Association's labor specialists, announced its intention to hire permanent replacement employees in the event of a walkout. In response, one of the union representatives noted the existence of the Striker Replacement Law. Later, Northern Hydraulics circulated a letter to its employees that advised them that it would hire permanent replacements should a strike occur; the USWA did not respond. Ultimately, no strike materialized, nor did the USWA ever take any action to enforce the Striker Replacement Law. The Union agreed to the company's final offer on December 12.

The Association instituted this lawsuit, a declaratory judgment action filed under 28 U.S.C. § 2201, on or about December 2, 1991. Between the date that the Association filed its suit and the point at which the District Court granted summary judgment, a Minnesota state trial court decided a declaratory judgment suit arising out of an actual strike

---

**2.** The State intervened to defend the statute, pursuant to Fed.R.Civ.P. 24(a).

**3.** The statute became law when a state court determined that the Governor's attempted veto was invalid. See LeRoy, *supra* note 2, at 858–59.

**4.** A violation of the Striker Replacement Law also is an "unlawful act" under the MLRA. § 179.12(10). The parties disagree as to whether such a violation is a crime. Resolution of this question is unnecessary to our disposition of this case.

in Roseville, Minnesota. In that case, a transportation company challenged the Striker Replacement Law on the same grounds as those asserted by Employers Association in this suit, namely that the Striker Replacement Law was pre-empted by federal labor law, and thus was unconstitutional under the Supremacy Clause of the U.S. Constitution. On February 25, 1992, the state trial court found in favor of the Union and intervenor State of Minnesota, holding that the Striker Replacement Law was not pre-empted. *Midwest Motor Express v. International Brotherhood of Teamsters, Local 120,* 139 L.R.R.M. (BNA) 2563, 1992 WL 296760 (Minn.Dist.Ct.1992). The Court of Appeals of Minnesota affirmed on January 19, 1993. 494 N.W.2d 895 (1993). The Supreme Court of Minnesota granted review on March 16, 1993. That case has since been argued, and no decision has been announced.

## II.

■ Under certain circumstances, courts best exercise their discretion by electing not to decide. In particular, according to *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 500–02, 61 S.Ct. 643, 645–46, 85 L.Ed. 971 (1941), federal courts should refrain from exercising jurisdiction if the federal issues presented in a case may be substantially altered or avoided by state-court interpretation of state law. As the Supreme Court said not long ago:

> [W]hen the state statute at issue is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question," ... abstention may be required "in order to avoid unnecessary friction in federal-state relations, interference with important state

functions, tentative decisions on questions of state law, and premature constitutional adjudication."

*Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979), quoting *Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965). Furthermore, although not dispositive in and of itself, one consideration in deciding whether to abstain from granting declaratory relief is whether there is a prior pending state court action: "[P]articularly where there is an identity of issues, [the existence of a prior state action] is an important factor to consider." *State Farm Mutual Automobile Ins. Co. v. Bonwell,* 248 F.2d 862, 866 (8th Cir. 1957).

■ In the instant case, the District Court decided not to abstain because an important federal question was at stake, and because it concluded that the Striker Replacement Law could not be construed so as to avoid the pre-emption issue. 803 F.Supp. at 1563. We think the District Court's reading of the statute was reasonable. However, in the interim, the Court of Appeals of Minnesota, acting under its mandate to interpret enactments in the fashion most likely to preserve their constitutionality, determined that there was an ambiguity in the statute's term "permanent replacement employee." The Court then proceeded to provide a construction of the term which would—it held—allow the statute to be applied without offending the Supremacy Clause, depending upon the type of permanent offer made in a particular situation.[5] *Midwest Motor Express v. International Brotherhood of Teamsters, Local 120,* 494 N.W.2d 895, 898, 900–01 (Minn.App.1993). According to the Minnesota Court of Ap-

---

5. In finding an ambiguity in the statute the *Midwest Motor Express* Court reasoned as follows:

> The resolution of this issue depends on our construction of the term "permanent" as it is used in the Act.
> The Act does not define "permanent." ... This word has a meaning under federal labor law. It also has a meaning under the common law of contracts and case law modifying the employment-at-will rule. *See, e.g., Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn. 1983)....

> [T]he creation of a contract in an actual striker replacement situation is very much dependent upon the facts and circumstances which give rise to that contract.

494 N.W.2d at 899. The Court proceeded to construe the statute, concluding that those offers of permanent employment "that have no connection to state contract law would be outside the reach of the statute as we construe it. We believe that this narrows the statute sufficiently so that it passes constitutional muster." *Id.* at 900. The Court then remanded for a determination of the type of offer made by Midwest. *Ibid.*

peals, the statute would allow an employer to hire permanent replacements, but only if the contract of employment left the company free to dismiss the replacements as part of a settlement of a strike or lockout. The employees thus hired would be "permanent" at the sole discretion of the employer. This interpretation of the statute, the Court thought, would not conflict with federal labor law.

Now the Minnesota Supreme Court is reviewing *Midwest Motor Express,* and we are faced with a situation in which that court could adopt the state appellate court's interpretation, the District Court's interpretation, or still another interpretation.[6] Ultimately we might conclude, as did the District Court, that no interpretation could preserve the constitutionality of the statute; nevertheless, "[w]e are of course bound by a State's interpretation of its own statute. . . ." *Garner v. Louisiana,* 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961). Thus, at this time the most prudent course is to await a definitive interpretation by Minnesota's highest court. If we do otherwise, we run the risk of basing our ruling on an interpretation of state law which might be rejected shortly thereafter. At a minimum, the pending state-court case could "substantially modify" the federal issue which must be addressed. Therefore, regardless of whether the District Court erred in refusing to abstain at the earlier stage, in light of subsequent developments, we should abstain now.[7] This is the case even though both the plaintiffs and the defendants in the two actions are different. Identical interests and legal questions are involved in both cases, federal and state.

### III.

Resolution of the plaintiff's federal pre-emption claim requires a definitive construction of Minnesota's Striker Replacement Act.

6. For example, it has been suggested that the statute could be construed to apply only to strikes in protest of unfair labor practices, in which the hiring of permanent replacements is already prohibited by federal law.

7. We abstain in light of the desirability of a definitive interpretation of state law, and the imminence of such an interpretation by the appropriate court; that is, we are abstaining under

The best course for the federal courts is to refrain from exercising jurisdiction over this case at least until *Midwest Motor Express* has been decided by the Minnesota Supreme Court. Because we conclude that we should abstain from further consideration of this case at the present time, we need not address the defendants' claims that this case does not present a ripe dispute and that the District Court erred on the merits of plaintiff's pre-emption claim. We remand this case to the District Court with instructions to hold the case on its docket until the state-court litigation produces an interpretation of the state law sufficiently definite to provide a secure predicate for federal constitutional adjudication. Further, if either party to the state-court case seeks review in the Supreme Court of the United States of the eventual decision of the Supreme Court of Minnesota, the District Court should continue to stay its hand until the Supreme Court of the United States has disposed of the case. That Court may finally and authoritatively decide the question of federal pre-emption.

Vacated and remanded with instructions.

HANSEN, Circuit Judge, dissenting.

I respectfully dissent from the court's judgment to abstain from deciding whether the Minnesota Striker Replacement Law is constitutional.

The abstention doctrine is designed to avoid unnecessary rulings on issues of state law. Federal courts do not exercise the judicial power prudently when they issue "tentative answers" that are later made obsolete by a controlling decision of a state court. *See Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 499–501, 61 S.Ct. 643, 644–45, 85 L.Ed. 971 (1941).

the *Pullman* doctrine. It is not necessary to discuss the possible propriety of abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Thus the plaintiff's citation of *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), is inapposite, because that case has to do with *Younger* abstention.

However, federal courts need not abstain on *Pullman* grounds when a state statute is not "fairly subject to an interpretation which will render unnecessary" adjudication of the federal constitutional question....

. . . .

. . . . [T]he relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts *might* render adjudication of the federal question unnecessary. Rather, "[w]e have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction."

*Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 236–37, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (quoting *Harman v. Forssenius,* 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965), and *Zwickler v. Koota,* 389 U.S. 241, 251 & n. 14, 88 S.Ct. 391, 397 & n. 14, 19 L.Ed.2d 444 (1967) (first alteration added)). Thus, abstention is proper only if the question whether a federal ruling is unnecessary hinges on a state court's interpretation of state law. *See* Martin H. Redish, *Federal Jurisdiction* 283–84 (1990).

I believe the federal courts inevitably will be faced with the federal constitutional question presented in this case. I hold this belief despite the Minnesota Court of Appeals' strained effort to construe the state statute to avoid the Supremacy Clause. *See Midwest Motor Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Local 120,* 494 N.W.2d 895, 897–900 (Minn.Ct.App.1993), *petition for review granted,* No. C6–92–1126 (Minn. Mar. 16, 1993). In my view, the Minnesota Court of Appeals failed to "narrow[ ] the statute sufficiently so that it passes constitutional muster," *id.* at 900, and it has seriously misread *Belknap, Inc. v. Hale,* 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), holding without adequate reasoning that the state statute is constitutional when applied to employment contracts that "contain elements that (at least partially) meet both the definition of permanent under federal law and under state law," *see Midwest Motor Express,* 494 N.W.2d at 900.

I have great difficulty seeing how the Minnesota Supreme Court could construe the state statute in a way that would avoid the Supremacy Clause, particularly when it was the delicate federally fashioned balance of collective bargaining powers available to both labor and management with which this statute was specifically designed to interfere, (*see* Brief for Amicus Curiae Minnesota Chamber of Commerce at 12 n. 6).

In sum, because I fail to see even a "bare, though unlikely, possibility" that abstention in this case will achieve its purpose, *Midkiff,* 467 U.S. at 237, 104 S.Ct. at 2327, let alone a state statute that is "obviously susceptible of a limiting construction," *id.,* I dissent from the court's opinion.