32 F.3d 1297
 147 L.R.R.M. (BNA) 2004, 63 USLW 2164,
129 Lab.Cas. P 11,206
 EMPLOYERS ASSOCIATION, INC., for Itself and on Behalf of Its
Member Employers, Appellee,
v.
UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC, Appellant,
State of Minnesota, Intervenor.
EMPLOYERS ASSOCIATION, INC., for Itself and on Behalf of Its
Member Employers, Appellee,
v.
UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC, Defendant,
State of Minnesota, Intervenor/Appellant.
 Nos. 92-3636, 92-3641.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1994.
Decided Aug. 19, 1994.
 
 Scott R. Strand, St. Paul, MN, argued (Michael J. Vanselow, John G. Engberg and Scott A. Higbe, on the brief), for appellant.
 Mark B. Rotenberg, Minneapolis, MN, argued (Michael J. Wahoske and James H. Curtin, on the brief), for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN and HANSEN, Circuit Judges.
 RICHARD S. ARNOLD, Chief Judge.
 
 
 1
 On behalf of itself and its members, plaintiff Employers Association challenged the validity of the Minnesota Striker Replacement Law, Minn.Stat. Sec. 179.12(9) (1993). The Striker Replacement Law declares it an unfair labor practice for employers to hire permanent replacement employees during a strike or lockout. The plaintiff argued that the state law was pre-empted by the National Labor Relations Act (NLRA). The defendant, the United Steelworkers of America, and the intervenor, the State of Minnesota (collectively, "the defendants"),[1] responded that, as between the parties to this suit, there was no dispute ripe for judicial resolution. Moreover, the union and the State urged this Court to abstain in favor of already pending litigation between different parties in the Minnesota courts, in which the construction of the same statute was at issue. On the merits, the defendants contended that the state legislation was not pre-empted by federal labor law.
 
 
 2
 In a thorough opinion ruling on the parties' cross-motions for summary judgment, the District Court[2] found that there was, indeed, a ripe dispute between the Association and the union, and that there was no need to abstain. Employers Association, Inc. v. United Steelworkers of America, 803 F.Supp. 1558, 1563 (D.Minn.1992). Moreover, the District Court held that the Minnesota statute was unconstitutional because it was pre-empted by federal labor law. Id. at 1565-68.
 
 
 3
 On March 18, 1994, we filed an opinion holding that the federal courts should abstain from reaching the merits of the pre-emption issue. 19 F.3d 405 (8th Cir.1994). We did so because we believed that litigation was still pending in the Minnesota state courts that might clarify the meaning of the state statute, and thereby significantly alter or eliminate the pre-emption question. Subsequently we learned that, on March 11, 1994, the Minnesota Supreme Court had issued an opinion finally and authoritatively construing the Striker Replacement Law, and finding it pre-empted by the NLRA. Midwest Motor Express, Inc. v. International Brotherhood of Teamsters, Local 120, 512 N.W.2d 881 (Minn.1994). Thus, our basis for abstention removed, we filed an order vacating our previous decision on May 23, 1994. 23 F.3d 214 (8th Cir.1994) (per curiam). Now, we turn our attention to the other issues in this case: the preliminary question of ripeness and the substantive issue of pre-emption.
 
 I.
 
 4
 The challenged statute declares that an employer commits an unfair labor practice when it:
 
 
 5
 grant[s] or offer[s] to grant the status of permanent replacement employee to a person for performing bargaining unit work for an employer during a lockout of employees in a labor organization or during a strike of employees in a labor organization authorized by a representative of employees.
 
 
 6
 Minn.Stat. Sec. 179.12(9). Under Minnesota law, state courts are authorized to grant injunctive relief when any unfair labor practice is "threatened or committed." Minn.Stat. Sec. 179.14. Moreover, the commission of an unfair labor practice diminishes the violator's right to injunctive remedies otherwise available under the Minnesota Labor Relations Act (MLRA). Minn.Stat. Sec. 179.15.[3]
 
 
 7
 This lawsuit arose amidst a series of negotiations, beginning September 16, 1991, between one of the Association's members, Northern Hydraulics, and the Steelworkers. Although the union was engaged in informational picketing during the negotiations, it never publicly manifested any intention to strike. However, at one point during discussions between the two sides, on or about September 30, Northern Hydraulics, represented by one of the Association's labor specialists, announced its intention to hire permanent replacement employees in the event of a walkout. In response, one of the union representatives noted the existence of the Striker Replacement Law. On October 1, Northern Hydraulics circulated a letter to its employees that advised them that it would hire permanent replacements should a strike occur. However, no strike materialized, nor did the union ever take any action to enforce the state law.
 
 II.
 
 8
 As a preliminary matter, the Steelworkers argue that, as between the Employers Association and the union, there presently exists no justiciable controversy; that is, they argue that the case is not ripe for adjudication.
 
 
 9
 Ripeness is demonstrated by a showing that a live controversy exists such that the plaintiffs will sustain immediate injury from the operation of the challenged provisions, and that the injury would be redressed by the relief requested. Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 81, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978). In other words, "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979), citing O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). However, " '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.' " Babbitt, 442 U.S. at 298, 99 S.Ct. at 2308, quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923).
 
 
 10
 Members of the Association have been and will be engaged in collective-bargaining negotiations with the Steelworkers for the foreseeable future. By making the hiring of permanent replacements, at a minimum, potentially unlawful, the state law dispossesses the Association's members of a potent weapon which they once held in reserve. See Belknap v. Hale, 463 U.S. 491, 500, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983); NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 345-46, 58 S.Ct. 904, 910-11, 82 L.Ed. 1381 (1938). As a result, the statute permanently and substantially shifts the terms of bargaining in favor of the union, even in situations where the possibility of a strike appears remote. As the District Court observed, "[t]he enactment of the Striker Replacement Law has materially altered the Congressionally defined equilibrium which exists between management and organized labor in collective bargaining negotiations." 803 F.Supp. at 1562.
 
 
 11
 This case is not deprived of ripeness merely because the union did not seek injunctive relief on this particular occasion. For one thing, as the plaintiffs point out, the mere fact of hiring permanent replacements in a strike situation--regardless of whether the Steelworkers sought an injunction to prevent that action--would disqualify the Association from seeking its own remedies under the MLRA. For another, "[a] strike, or the threat of one, would not significantly advance the court's ability to deal with the legal question presented in the complaint." Greater Boston Chamber of Commerce v. City of Boston, 772 F.Supp. 696, 699 (D.Mass.1991) (challenge of anti-strikebreaker statute with automatic penalty provisions found justiciable).
 
 
 12
 In Babbitt v. United Farm Workers, supra, 442 U.S. at 304, 99 S.Ct. at 2312, the Supreme Court allowed pre-enforcement constitutional review of certain provisions of a broad farm-labor-regulatory statute, while holding an attack on other provisions nonjusticiable. Babbitt held that challenges to the provisions regulating election procedures, consumer publicity, and criminal sanctions presented a case or controversy, even without any enforcement action, but that the challenges to workplace access and mandatory arbitration provisions did not. The strength of the plaintiffs' claim on the workplace-access provision "depend[ed] inextricably upon the attributes of the situs involved," something not known in that particular action. 442 U.S. at 304, 99 S.Ct. at 2312. Similarly, review of the compulsory-arbitration provision would have been imprudent: "assuming an arguably unlawful strike [was to] occur, employers may elect to pursue a range of responses other than seeking an injunction and agreeing to arbitrate." Id. at 305, 99 S.Ct. at 2312. In the instant case, by contrast, it seems highly unlikely that the union would fail to avail itself of the state law's protections in the event that permanent replacements are hired; no strategically comparable options exist.
 
 
 13
 The members of Employers Association would be injured by the statute not only on an occasion where the union seeks to enforce the state law in the context of a strike, but in all negotiating situations where the economic weapon of hiring permanent-replacement workers would no longer form the backdrop to labor-management discussions. See Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. at 72-82, 98 S.Ct. at 2629-35 (challenge to liability-limits provisions of federal nuclear-plant-regulatory statute was ripe, even before an actual nuclear incident, because plaintiffs would suffer immediate injury from operation of the plants, and that injury would be redressed by requested relief). We conclude that the change wrought by the Striker Replacement Law in the ground rules of collective bargaining in Minnesota represents an injury sufficiently concrete to render the dispute ripe for judicial action; we need not await an actual attempt on the part of the union to enforce the statute.
 
 III.
 
 14
 We now turn to the question of whether the Striker Replacement Law is pre-empted by the NLRA. The District Court held that the statute was unconstitutional, because it deprived Employers Association of the weapon of hiring permanent-replacement workers during an economic strike,[4] an option which the District Court characterized as a "well-established right" under federal labor law. 803 F.Supp. at 1565.
 
 
 15
 In a decision rendered after this case was briefed, the U.S. Supreme Court discussed, in some detail, the standards for pre-emption under the NLRA. Building & Construction Trades Council of the Metropolitan District v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc., --- U.S. ----, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993) (Blackmun, J.). The Court observed, first, that "[t]he NLRA contains no express pre-emption provision." Id. at ----, 113 S.Ct. at 1194. Therefore, consistent with recent pre-emption jurisprudence, a court should not find pre-emption "unless [the provision at issue] conflicts with federal law or would frustrate the federal scheme, or unless [the Court] discern[s] from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." Ibid., quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747-48, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985). Then, the Court reaffirmed the existence of "particular pre-emption doctrines that have developed around the NLRA." Building & Construction Trades Council, --- U.S. at ----, 113 S.Ct. at 1194. Specifically, the Court noted that it "has articulated two distinct NLRA pre-emption principles." Ibid., quoting Metropolitan Life, 471 U.S. at 748, 105 S.Ct. at 2394.
 
 
 16
 The first, "Garmon pre-emption," see San Diego Building Trades Council v. Garmon, [359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775] (1959) ] forbids state and local regulation of activities that are "protected by Sec. 7 of the [NLRA], or constitute an unfair labor practice under Sec. 8." Garmon pre-emption prohibits regulation even of activities that the NLRA only arguably protects or prohibits. This rule of pre-emption is designed to prevent conflict between, on the one hand, state and local regulation and, on the other, Congress' integrated scheme of regulation, embodied in Secs. 7 and 8 of the NLRA, which includes the choice of the NLRB, rather than state or federal courts, as the appropriate body to implement the Act.
 
 
 17
 * * * * * *
 
 
 18
 A second pre-emption principle, "Machinists pre-emption," see Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. [132 [96 S.Ct. 2548, 49 L.Ed.2d 396] (1976) ], prohibits state and municipal regulation of areas that have been left to be controlled by the free play of economic forces. Machinists pre-emption preserves Congress' intentional balance between the uncontrolled power of management and labor to further their respective interests.
 
 
 19
 Building & Construction Trades Council, --- U.S. at ---- - ----, 113 S.Ct. at 1194-95 (citations omitted) (emphasis original).
 
 
 20
 The District Court found that the Minnesota law violated Machinists, because the Striker Replacement Law interfered with an area which Congress had intended to leave unregulated. The District Court also indicated that the statute failed under Garmon. Almost identical conclusions were drawn by the Minnesota Supreme Court in Midwest Motor Express. 512 N.W.2d at 887, 889-90.[5] The opinions of the District Court and of the Supreme Court of Minnesota are complete and fully reasoned. We see no point in going over the ground once again. We agree in substance with the conclusions reached by those courts.
 
 IV.
 
 21
 In summary, we hold that the controversy presented in this case is ripe, and that the Minnesota Striker Replacement Law is pre-empted by the National Labor Relations Act under both the Machinists and Garmon doctrines. We conclude by quoting from the Minnesota Supreme Court:
 
 
 22
 It may be that the scales have once again become somewhat unbalanced and that in consideration of changes in the economic climate and the escalation of violence in our society, it is time for Congress to revisit the regulation of the use of economic weapons. If, however, there is an imbalance in economic weaponry, it is not a regional problem to be addressed in whatever manner, or not at all, as each state sees fit; it is a national problem which requires uniform treatment by Congress.
 
 
 23
 512 N.W.2d at 890. The judgment of the District Court is affirmed.
 
 
 24
 It is so ordered.
 
 
 25
 HANSEN, Circuit Judge, concurring in part and dissenting in part.
 
 
 26
 I concur in all of the court's opinion and in its judgment, except I respectfully decline to join that portion of Part IV which includes the quotation from the opinion of the Supreme Court of Minnesota. I do so for two reasons. First, the quotation is unnecessary for our court's holding and is clearly obiter dictum. Second, Congress needs no encouragement from our court to "revisit" the labor-management policy questions underlying the legal dispute in this case. The current Congress has taken up a striker replacement bill both in the House of Representatives, where it passed on June 15, 1993, and in the Senate, where the issue received three days of debate just last month. Accordingly, because the Congress needs no pointed reminder that it has pre-empted the issue from the states, I respectfully dissent from doing so.
 
 
 
 [1]
 The State intervened to defend the statute, pursuant to Fed.R.Civ.P. 24(a)
 
 
 [2]
 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota
 
 
 [3]
 The violation of the Striker Replacement Law is also deemed an "unlawful act" under the MLRA. The parties disagree as to whether a violation thus becomes a criminal act. Resolution of this question is unnecessary to the disposition of this case
 
 
 [4]
 All agree that no such right exists during an unfair-labor-practice strike
 
 
 [5]
 Midwest Motor Express does not bind us on the issue of the validity of the state law under the federal constitution. However, we are bound by its interpretation of state law