# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1948

_____

| | | |
|---|---|---|
| Paraquad, Inc., a Missouri non-profit corporation; Mental Health Association, of St. Louis, a Missouri non-profit corporation; Depressive and Manic Depressive Association, of St. Louis, a Missouri non-profit corporation; Beatrice E. Creason; Ariel Marquardt, | * * * * * * * * * | |
| | * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Appellants, | * * | |
| v. | * * | |
| St. Louis Housing Authority, a Missouri municipal corporation; Cheryl A. Lovell, in his official capacity as Executive Director of the St. Louis Housing Authority, | * * * * * * | |
| Appellees. | * | |

_____

Submitted:  January 8, 2001

Filed:  August 8, 2001

_____

Before RICHARD S. ARNOLD, FAGG, and BOWMAN, Circuit Judges.

_____

FAGG, Circuit Judge.

In 1995 the St. Louis Housing Authority (SLHA) received a HOPE VI implementation grant of $46.7 million from the United States Department of Housing and Urban Development (HUD) for revitalization of the Darst-Webbe public housing complex. The HOPE VI plan generally calls for demolition of more than 1200 public housing dwelling units (less than half of which are occupied) and construction of more than 650 new mixed income apartments and homes. The plan's major components include demolition of the Darst-Webbe Family building and construction of new family housing, demolition of both the Webbe Elderly and Paul Simon buildings (which have units reserved for the elderly and nonelderly disabled) and their replacement with a new senior development, and selective demolition and reconfiguration of the Clinton Peabody site.

Two public housing tenants with disabilities, Beatrice E. Creason and Ariel Marquardt, and three organizations that provide counseling, education, and other services to disabled individuals, Paraquad, Inc., the Mental Health Association of Greater St. Louis (MHA), and the Depressive and Manic Depressive Association (DMDA), brought this lawsuit asserting the SLHA refused to provide HOPE VI replacement housing and supportive services to disabled families and refused to provide accessible HOPE VI replacement housing. The plaintiffs seek declaratory and injunctive relief under the Fair Housing Act, the Rehabilitation Act, the Americans with Disabilities Act, and the Equal Protection Clause. The plaintiffs also assert the SLHA is implementing the HOPE VI plan in a way that violates the requirements of the plan and the United States Housing Act. The district court[*] granted summary judgment to the SLHA, holding the plaintiffs lack standing to pursue their claims, their challenge is not ripe for adjudication, and Creason's claims are moot. Paraquad v. Saint Louis

---

[*]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

Housing Auth., No. 4:98CV01557 ERW (E. D. Mo. Mar. 6, 2000).  The plaintiffs appeal.  Because we conclude the plaintiffs' claims are not ripe, we affirm.

"The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." Nebraska Pub. Power Dist. v. Midamerican Energy Co., 234 F.3d 1032, 1037 (8th Cir. 2000).   The doctrine seeks "'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"  Id.  (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). The ripeness inquiry requires examination of both the "'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'"  Id. at 1038 (quoting Abbott Labs., 387 U.S. at 149).  To be ripe for decision, the harm asserted must have matured enough to warrant judicial intervention. Johnson v. Missouri, 142 F.3d 1087, 1090 n.4 (8th Cir. 1998).   The plaintiffs need not wait until the threatened injury occurs, but the injury must be "'certainly impending.'" Employers Ass'n v. United Steelworkers AFL-CIO-CLC, 32 F.3d 1297, 1299 (8th Cir. 1994) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

The district court held any threatened injury in this case is simply not imminent.  The court believed that for the plaintiffs claims to be ripe, the court would have to be presented with facts that more specifically show the likelihood of injury.  The district court stated the plaintiffs had not come forward with evidence showing any disabled individuals have been relocated to an inaccessible housing unit, denied relocation at all, or denied public housing as a result of the HOPE VI project.  Likewise, the plaintiffs presented no evidence that the actual, finished units will not be accessible and in compliance with applicable federal law.  The plaintiffs concede the elderly-only facility will be accessible.

On appeal, the plaintiffs argue the district court's conclusion fails to recognize that the gist of their lawsuit is the unequal housing and service opportunities afforded the disabled under the HOPE VI plan. The plaintiffs claim that because the elderly will have units reserved specifically for them, the disabled should too. The plaintiffs contend the injury of unequal opportunity has already occurred. The plaintiffs also argue sufficient administrative events in furtherance of the plan have already occurred to make the controversy ripe for decision. The plaintiffs say the specificity of the HOPE VI plan–which explicitly excludes the nonelderly disabled from occupancy in the new elderly-only development, sets aside no other housing specifically for the disabled, contains a support services plan designed without considering the needs of disabled HOPE VI residents, and includes building designs and floor plans with accessibility problems–creates a substantial likelihood they will be denied new HOPE VI housing and services.

We cannot agree that the denial of HOPE VI housing and services to the disabled is "certainly impending." The plaintiffs cannot identify any individuals who have been denied accessible housing under the SLHA's implementation of HOPE VI, and plans for the design and construction of the HOPE VI dwellings are not yet complete. The plaintiffs assert they were injured because HOPE VI fails to afford equal housing and service opportunities to the disabled, but this argument lacks merit because the plaintiffs cannot show that all proposed HOPE VI housing will fail to accommodate their needs. The plaintiffs rely on the proposed elderly-only units to support their discrimination claim, but the HOPE VI plan proposes at least 650 units of new public housing, and the plaintiffs cannot prove the SLHA has precluded them from residing in all of the new HOPE VI facilities, which are yet to be built.

The HOPE VI plan will be implemented in several phases, and the SLHA must obtain HUD approval for all demolitions, architectural drawings, and new construction plans. As for the phase involving construction of the new building for the elderly,

demolition has not yet started, drawings are still in the preliminary phase, and no new construction has begun. Although the plan does not propose a separate building just for the disabled, the Darst-Webbe HOPE VI relocation plan states, "The SLHA will provide each relocatee temporary or permanent housing at comparable cost on a non-discriminatory basis." (Appellant's App. Vol. I at 100249.) In addition, the SLHA entered into a memorandum of understanding with the resident councils of Webbe Elderly and Paul Simon. (Appellant's App. Vol. II at 100499.) The memorandum provides that the SLHA will conduct a survey of all disabled, elderly, and near elderly residents in order to identify their needs and expectations as related to the HOPE VI program. Elderly, near elderly, and disabled residents will not be relocated temporarily or permanently before completion of the survey. Current Webbe Elderly and Paul Simon residents will be given first preference for residence within the new redeveloped elderly building. Although only elderly residents can live there, disabled residents are eligible to return to other HOPE VI units in other buildings at scattered sites.

The plaintiffs argue we have found ripe controversies in similar cases challenging governmental barriers to equal treatment, citing Meadows of West Memphis v. City of West Memphis, Ark., 800 F.2d 212 (8th Cir. 1986) and Park View Heights Corp. v. City of Black Jack, 467 F.2d 1208 (8th Cir. 1972). These cases are distinguishable. In Meadows, the complaint alleged the City blocked the plaintiff's access to public financing for at least a year for an unconstitutional reason. 800 F.2d at 215. The delay itself was the injury. In Park View, we considered an attack on a zoning ordinance that prohibited the construction of multiracial housing. We noted the architectural and engineering plans for the building were complete, and the City could do nothing further to exclude the plaintiffs from the community. 467 F.2d at 1215. In our case, however, there are many unresolved uncertainties. None of the plaintiffs can show any disabled individual has been or will be denied accessible housing in connection with the implementation of HOPE VI.

Assuming without deciding that the plaintiffs have standing to bring this lawsuit, we conclude their claims are not ripe for decision at this time. We thus affirm the district court. We also deny the appellants' request for leave to submit a supplemental appendix containing two documents because the documents are not material to the issues on appeal.

RICHARD S. ARNOLD, Circuit Judge, dissenting.

The Court's able opinion is persuasive, but in one respect, at least, it leaves me unconvinced.

The plaintiffs allege (and it appears to be undisputed) that under the HOPE VI Plan certain units will not be open to younger disabled tenants. These units will be set aside for older tenants, including both disabled and non-disabled people. No units will be set aside for younger disabled people. This state of affairs, plaintiffs claim, violates several federal statutes and the Equal Protection Clause of the Fourteenth Amendment.

I believe this claim is ripe for adjudication. The aspects of the Plan challenged by plaintiff are firmly in place. They are absolutely excluded from being considered as tenants in the elderly-only portion of the new development. The Court appears to feel that the claim is not ripe because the plaintiffs might be given housing in some other units also included in the HOPE VI Plan. That is, plaintiffs are not totally excluded from all HOPE VI facilities. This circumstance, it seems to me, may make plaintiffs' claim less persuasive on the merits, but it has nothing to do with ripeness. The gist of their claim is not that any of them has been excluded from housing, but that they are prevented from applying for housing in a certain location, solely because of their status as younger people, notwithstanding the fact that they are disabled.

If the claim were of racial discrimination, rather than disability discrimination, surely no one would argue that it is not ripe. Say a housing authority sets aside a number of units for white people only. Other units, however, are equally available to all races. The fact that a certain non-white plaintiff might get housing in these other units would not, it seems to me, mean that his claim that he is being deprived of equal treatment with respect to the projected all-white units is not ripe.

For these reasons, I respectfully dissent. I express no view on the merits of any of plaintiffs' claims.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-