**METROPOLITAN MILWAUKEE ASSOCIATION OF COM- MERCE, Plaintiff,**

v.

**MILWAUKEE COUNTY, et al., Defendants.**

No. 01–C–0149.

United States District Court, E.D. Wisconsin.

April 25, 2002.

944

Scott C. Beightol, Jonathan O. Levine, Gordon P. Giampietro, Michael Best & Friedrich, Milwaukee, for Metropolitan Milwaukee Association of Commerce, plaintiffs.

Frederick Perillo, Marianne Goldstein Robbins, Andrea F. Hoeschen, Previant Goldberg Uelmen Gratz, Miller & Brueggeman, Milwaukee, for Milwaukee County, F. Thomas Ament, Milwaukee County Department of Human Services, Ralph Hollmon, Milwaukee County Department of Public Works, Milwaukee County Department on Aging, Stephanie S. Stein, David Novak, defendants.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Metropolitan Milwaukee Association of Commerce, an association of area businesses, challenges Milwaukee County's labor peace ordinance ("Chapter 31"). Chapter 31 requires certain Milwaukee County contractors to sign "labor peace agreements" with unions who seek to organize the contractors' County-funded employees. Plaintiff asserts that Chapter 31 is preempted by the National Labor Relations Act, 29 U.S.C. §§ 151, et seq., and violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment. Defendants dispute these assertions and also contend that I lack subject matter jurisdiction because plaintiff lacks standing and because its claims are not ripe. Before me now are the parties' cross motions for summary judgment.

### I. FACTS AND BACKGROUND

Enacted in September 2000, Chapter 31 applies to entities with contracts of $250,000 or more with the County Department of Human Services, Department on Aging to provide "care or treatment services," and Department of Public Works to provide "transportation services for the elderly or persons with disabilities." Milwaukee County, Wis., Gen. Ordinances § 31.02(a) (2001). The ordinance potentially covers $53,000,000 of the County's more than $300,000,000 annual budget for purchasing services.

The purpose of Chapter 31 is to protect the County's interest in ensuring the uninterrupted delivery of County-funded services to vulnerable residents by preventing delays and disruptions caused by labor disputes during labor organizing drives. *Id.* § 310.01. Thus, in the event a union seeks to organize a contractor's County-funded employees, the contractor must take certain steps to try to avoid disruptions during the organizing campaign. *Id.* §§ 31.01, 31.03(b). Specifically, Chapter 31 requires the union and the contractor to agree to forgo certain types of disruptive activity, such as union economic action at the work-site, employer dissemination of false information intended to influence employee decision-making, and union or employer coercion or intimidation of employees. *Id.* § 31.01(f). If the union will agree to abide by Chapter 31's terms, then the contractor must likewise agree. *Id.* § 31.04. Chapter 31 gives the County discretion to terminate contracts with con-

tractors who refuse to sign labor peace agreements with willing unions or who have been found by a neutral arbitrator to have violated labor peace agreements entered into pursuant to the ordinance. *Id.* § 31.05. Chapter 31 requires nothing of a contractor until a union seeks to organize its employees who perform work under the County contract. *See id.* § 31.01.

In late 2000 and early 2001, the County began sending out renewal contracts and soliciting bids for the 2001 year. The new contracts included a provision requiring compliance with Chapter 31 for those contractors covered by the ordinance. The provision stated,

> Labor Peace Agreement to Reduce the Likelihood of Labor Disputes—Where applicable, Contractors shall comply with the provisions of Chapter 31 of the General Ordinances of Milwaukee County which is incorporated herein by reference and made a part of this Contract as if physically attached hereto.

(*E.g.,* R. 41 Ex. C at 14.) Some contractors objected and crossed-out the provision before signing. However, County administrators refused to accept the altered documents, and so contractors signed contracts including the provision. In 2002, the process repeated itself.

Plaintiff submits affidavits from six of its members who are currently operating under County contracts but state that they object to the inclusion of the Chapter 31 provision. Four state that the inclusion of Chapter 31 "discourage[s]" them from bidding on County projects and that they do not intend to comply with Chapter 31 in the future. (R. 36 ¶ 9; R. 37 ¶ 9; R. 40 ¶ 8; R. 42 ¶ 16). No member states that it has been contacted by a union, thus, no member has signed or refused to sign a labor peace agreement, or been penalized by the County for noncompliance.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis deleted). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325, 106 S.Ct. 2548. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 322–23, 106 S.Ct. 2548. Neither party may rest on mere allegations or denials in the pleadings, *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

When reviewing cross motions for summary judgment, I assess the merits of each summary judgment motion independently. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2720 at 335 (3d ed.1998). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. *Id.* The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on its motion. *Id.* I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. *See Mitchell v. McCarty*, 239 F.2d 721, 723 (7th Cir.1957).

## III. SUBJECT MATTER JURISDICTION

■■■ It is a basic principle of federal jurisdiction that federal courts cannot give advisory opinions or resolve abstract legal questions. *Wis. Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1185 (7th Cir.1998); *Wis.'s Envtl. Decade, Inc. v. State Bar*, 747 F.2d 407, 410 (1984). Article III limits the federal courts to deciding actual cases or controversies. *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 527 (7th Cir.2001). The party seeking to in-

voke the jurisdiction of the federal court has the burden to affirmatively show that it raises a case or controversy, *id.* (citing *City of L.A. v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)), and overcome the court's presumption that jurisdiction is lacking, *Renne v. Geary*, 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) (citing *Bender v. Williamsport Area Sch. Dist.* 475 U.S. 534, 546, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). When a party seeks a determination on the constitutionality of a statute, the case or controversy rule requires the party to present the constitutional question in the context of "a specific live grievance" or the court has no jurisdiction to hear it. *J.N.S. Inc. v. State*, 712 F.2d 303, 305 (7th Cir.1983); *see Renne*, 501 U.S. at 320, 111 S.Ct. 2331 (holding that plaintiff must "demonstrate a live dispute").

■■■ Particular rules apply when the party seeking jurisdiction is an association. Although generally a party can only assert its own rights, an association can assert the rights of its members if (1) its members on their own could otherwise raise a justiciable case or controversy; (2) the interests the association seeks to protect are germane to its purpose; and (3) " 'neither the claim asserted nor the relief requested requires the participation of individual members.' " *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 600 (7th Cir.1993) (quoting *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The first element of the test requires the court to treat the association's members as the plaintiffs and assess whether their claims would be justiciable under the general rules of justiciability applicable to all plaintiffs. Thus, I proceed to discuss the applicable rules of justiciability.

■■■ To establish a justiciable case or controversy, a plaintiff must show both

that it has standing to assert its claims and that now is an appropriate time for judicial intervention, meaning, in part, that the case is ripe for review. *See Renne,* 501 U.S. at 320, 111 S.Ct. 2331. To have standing to raise a claim, a plaintiff must show that she has suffered (1) an injury in fact (2) caused by the defendant that (3) "a favorable decision is likely to redress." *Tobin for Governor,* 268 F.3d at 527 (citations omitted). The doctrine of ripeness requires the court to evaluate whether the plaintiff has felt the effects of the challenged statute in a concrete way. *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,* 149 F.3d 679, 689 (7th Cir.1998) (citation omitted). The plaintiff bears the burden of proving these aspects of justiciability and must support each element "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Alliant Energy Corp. v. Bie,* 277 F.3d 916, 919 (7th Cir.2002). Thus, at the summary judgment stage, the plaintiff cannot rest on mere allegations; he or she "must 'set forth' by affidavit or other evidence 'specific facts'" which, when taken as true, establish each element. *Id.* (quoting Fed. R.Civ.P. 56(e)).

The standing and ripeness doctrines overlap. "It is sometimes argued that standing is about *who* can sue while ripeness is about *when* they can sue." *Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.,* 23 F.3d 1134, 1141 (7th Cir.1994). However, if no concrete injury has occurred yet, then as a practical matter, the distinction dissolves. Gene R. Nichol, Jr., *Ripeness and the Constitution,* 54 U. Chi. L.Rev. 153, 172 (1987) ("[In] measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing.").

The court could tell the plaintiff that *she* has suffered no injury and so has no standing, or that she has suffered no injury *yet* and so her claim is not ripe. *Smith,* 23 F.3d at 1141 (citation omitted). Ripeness, therefore, "can be characterized as standing on a timeline," *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1138 (9th Cir.2000) (en banc); and given this overlap in the doctrines, the Supreme Court has used them interchangeably, *Smith,* 23 F.3d at 1141. In the case before me, none of the plaintiff's members have violated the challenged ordinance; thus, the case could be addressed as a question either of ripeness or of standing. However, because the statute possibly could be enforced against members in the future, I find it makes more sense to assess justiciability through the lens of ripeness. Therefore, I will discuss the contours of the ripeness doctrine in more detail.

 Like the other justiciability doctrines, the ripeness doctrine seeks to confine courts to their proper role as the branch of government charged with deciding actual controversies, and not abstract legal questions. 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3532 at 114–15 (2d ed.1984). It prevents courts from deciding claims arising out of "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Tex. v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal citations and quotation marks omitted); *see Alcan Aluminium Ltd. v. Dep't of Revenue,* 724 F.2d 1294, 1295 n. 1 (7th Cir.1984) ("concern with the contingency of future events is at the core of the ripeness doctrine") (citation omitted).

 When bringing a pre-enforcement challenge to a law, a plaintiff can establish ripeness by meeting both prongs

of the two-part test established in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). *Smith*, 23 F.3d at 1141. The plaintiff must show both that (1) the issues are fit for judicial resolution and (2) delaying adjudication would cause the plaintiff hardship. *Id.* The first prong tests whether the factual record is sufficiently developed for the court to decide the legal questions before it. *Id.* If the dispute concerns almost purely legal issues, the prong is satisfied. *Id.* The second prong assesses the present effects of the challenged law on the plaintiff's daily affairs. *Id.; Commodity Trend Serv.*, 149 F.3d at 689.

▆▆▆▆ When raising a pre-enforcement challenge, a plaintiff can establish the second prong through two means. A plaintiff can establish hardship by showing that even though the law has not yet been enforced against it, "enforcement [is] certain and the only impediment to the case's ripeness is a delay before its eventual prosecution." *Crosetto v. State Bar*, 12 F.3d 1396, 1403 (7th Cir.1993). If, however, application of the law depends on contingent future events that may not occur, then plaintiff's claim is not ripe. *See Tex.*, 523 U.S. at 301, 118 S.Ct. 1257; *Dames & Moore v. Regan*, 453 U.S. 654, 689, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981); *Lucien v. Jockisch*, 133 F.3d 464, 469 (7th Cir. 1998); *Solo Cup Co. v. Fed. Ins. Co.*, 619 F.2d 1178, 1189 (7th Cir.1980); *see also J.N.S.*, 712 F.2d at 305 ("It is insufficient that an actual controversy may occur in the future; it must presently exist in fact.") A plaintiff can also establish hardship by showing that even though enforcement is not certain, the mere threat of future enforcement has a present "concrete" effect on the plaintiff's "day-to-day affairs" and that "irremediably adverse consequences [would] flow[ ] from requiring a later challenge." *Reno v. Catholic*

*Soc. Servs., Inc.*, 509 U.S. 43, 57–58, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (internal citations and quotation marks omitted); *see Gov't Suppliers Consol. Servs., Inc. v. Bayh*, 975 F.2d 1267, 1275 (7th Cir.1992) ("When present harms will flow from the threat of future actions, those present harms may mean a controversy is ripe for review.") (internal citations and quotation marks omitted); *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 63–64 (2d. Cir.1988) ("[T]he prospect or fear of future events may have a real impact on present affairs, such that a preemptive challenge is ripe."). Courts have recognized several different types of concrete hardships.

Spending a significant amount of money to avoid penalties has been found to impose a present concrete hardship making a claim ripe for review. *E.g., Abbott Labs.*, 387 U.S. at 152–53, 87 S.Ct. 1507. Thus, in *Abbott Laboratories*, a pharmaceutical company could challenge a regulation requiring it to alter its drug labels even though the government agency had not enforced the regulation yet because the company would have to either immediately spend a significant sum of money to comply or refuse to alter all its product labels and risk criminal and civil penalties. *Id.*

Planning for the potential future application of the law because the law would significantly alter the plaintiff's business can also constitute a present hardship. *E.g., Gov't Suppliers*, 975 F.2d at 1275; *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. Dev. Comm'n*, 461 U.S. 190, 201–202, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (finding that spending and advance planning satisfied the hardship prong in preemption challenge); *Triple G. Landfills, Inc. v. Bd. of Comm'rs*, 977 F.2d 287, 289–90 (7th Cir.1992) (finding that advance planning to prepare for potential future application satisfied hardship prong).

Thus, in *Government Suppliers,* a garbage broker could raise a pre-enforcement challenge to a statute that would prevent the disposal of out-of-state waste in the state where the plaintiff operated. *Gov't Suppliers,* 975 F.2d at 1275. The law would significantly alter its business and required the plaintiff to take immediate action by budgeting for possible increased shipping costs and securing new disposal sites in other states. *Id.*

In addition, self-censorship to avoid immediate penalties can also constitute a hardship if the threat of being penalized is objectively credible, not speculative. *Commodity Trend Serv.,* 149 F.3d at 687; *Wis. Right to Life,* 138 F.3d at 1185; *see also Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (holding that "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs").

▬ However, if the plaintiff cannot show that enforcement is certain or that the challenged law causes plaintiff a present concrete hardship, then the action is not ripe and must be dismissed. *See Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). Thus, in *Toilet Goods,* a company could not challenge a regulation that required it to provide inspectors access to its manufacturing facilities. *Id.* No inspection had been ordered, and the plaintiff could not say if or when it would ever be inspected; therefore, enforcement was not certain. *Id.* at 164, 87 S.Ct. 1520. No advance planning or spending was required in anticipation of a future inspection; and the plaintiff was not presently required to forgo any activity at the risk of prosecution. *Id.* Thus, the threat of future enforcement had no present concrete effect on the plaintiff's daily affairs. *Id.* The plaintiff could maintain its current conduct without

facing any hardship now or in the foreseeable future, and could bring an action if and when it ever faced an inspection. *Id.* Likewise, in *Smith,* the Seventh Circuit found a plaintiff dairy farmer's challenge to state permit suspension procedures unripe because he could not show if and when he would ever be subject to the procedures and the possibility of future application had no present effect on his affairs. *Smith,* 23 F.3d at 1142. He would only be subject to the procedures if the state determined that he repeatedly violated safety standards, a determination that might never be made, and the potential future application did not require that he spend money, alter his business or forgo any activity. *Id.* at 1142. Thus, the claim was not ripe. *Id.* I now proceed to apply these principles to the case before me.

## B. Application of Law to Facts

▬ Plaintiff raises this challenge not to assert its own rights but to assert the rights of its members. Therefore, plaintiff only has a justiciable claim if (1) one of its members has a justiciable claim, (2) the plaintiff seeks to protect interests germane to its purpose and (3) participation of individual members is not needed. *See Hunt,* 432 U.S. at 343, 97 S.Ct. 2434. Given that plaintiff's purposes include defending the constitutional rights of its members and it seeks equitable relief applicable to all, I assume for the sake of argument that plaintiff can establish the second and third elements and proceed to determine whether plaintiff meets the first. I apply the *Abbott Laboratories* test.

Plaintiff easily establishes the first prong addressing the fitness of the issues for judicial resolution. Plaintiff raises a facial challenge, which presents almost purely legal issues "quintessentially 'fit' ... for present judicial resolution." *Com-*

*modity Trend Serv.*, 149 F.3d at 687 (finding facial challenge fit for judicial resolution).

However, plaintiff cannot meet the second prong of the test. First, plaintiff cannot show that enforcement of Chapter 31 is certain. For Chapter 31's provisions to apply to a member, a union would have to contact a member and seek to organize its County-funded employees. No member has been contacted by a union and no member can say if or when this event will ever occur. Thus, plaintiff's claim is based on "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Tex.*, 523 U.S. at 300, 118 S.Ct. 1257 (internal citations and quotation marks omitted). This is not a case where only time stands between the present state of affairs and application of the challenged law. *See Crosetto*, 12 F.3d at 1403. To the contrary, the law may never be applied to the members at all. And whether it is applied at some point in the future depends upon the conduct of third parties not before this court whose actions no one can predict.

Second, plaintiff has not shown that the possibility that Chapter 31 may be enforced in the future has a present "concrete" effect on the members' "day-to-day affairs" and that "irremediably adverse consequences [would] flow[ ] from requiring a later challenge." *See Reno*, 509 U.S. at 57–58, 113 S.Ct. 2485 (internal citations and quotation marks omitted). The members entered into contracts with the County for the 2001 and 2002 contract years and are now operating under the 2002 contracts. Plaintiff offers no evidence that a member must presently plan for potential changes in its business, *cf. Gov't Suppliers*, 975 F.2d at 1275, spend any resources in anticipation of future application Chapter 31, *cf. Abbott Labs.*, 387 U.S. at 152–53, 87 S.Ct. 1507, or forgo any lawful

activity, *cf. Commodity Trend Serv.*, 149 F.3d at 687. The members can continue with their regular operations and engage in whatever conduct they choose without running afoul of Chapter 31 now or at any point in the foreseeable future. Thus, the members are like the plaintiffs in *Toilet Goods* and *Smith*. They may or may not be subject to Chapter 31 at some time; but the ordinance has no present, concrete effect. Plaintiff or its members can raise a challenge to the ordinance if and when they are ever subject to its requirements. Right now, their claim is not ripe.

In its effort to establish federal court jurisdiction, plaintiff makes two arguments to try to show a present hardship. First, it asserts that Chapter 31 imposes a present hardship on the members because it discourages them from bidding on County projects. Four of the six members state in their affidavits that they "would like to bid on future County contracts, but [are] discouraged from doing so" by Chapter 31. (R. 36 ¶ 9; R. 37 ¶ 9; R. 40 ¶ 8; R. 42 ¶ 16.) However, the uncontroverted evidence in the record shows that these members were not actually discouraged from bidding on County projects. To the contrary, these same members bid on and received County contracts in both 2001 and 2002. Therefore, the record does not support plaintiff's argument that the members have actually been discouraged.

Perhaps by "discouragement" the members mean to say that the existence of Chapter 31 makes them somewhat more reluctant to bid on County projects than they were before the enactment of Chapter 31. However, such an assertion is tantamount to saying that they do not like Chapter 31. Dislike for a law does not establish a justiciable case or controversy. *See Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Poe v. Ullman*, 367 U.S. 497, 508, 81 S.Ct. 1752, 6

L.Ed.2d 989 (1961). If the members' reluctance is based on their fear that they may one day have to comply with Chapter 31, then this fear is also insufficient to establish justiciability. Subjective fears based on speculations about future events that may never occur establish no basis for federal jurisdiction. *Younger*, 401 U.S. at 41, 91 S.Ct. 746. Without a real objective threat of some imminent harm or a present concrete hardship, plaintiff's claim is not ripe. *See id.*

Plaintiff points to *Associated General Contractors v. Metropolitan Water District*, 159 F.3d 1178 (9th Cir.1998) for support for its argument that the members' subjective reluctance makes their claim ripe; however, that case offers a far narrower standard of ripeness than plaintiff proposes. In *Associated General Contractors*, the Ninth Circuit found justiciable a challenge to a bid specification requiring contractors to participate in particular ERISA plans for the duration of the project. *Id.* at 1181. Application of the ERISA plans was mandatory upon award of the bid. *Id.* At least one member contractor had been awarded a bid, had performed work on the project, and had complied with the specification. *Id.* Thus, its claim was plainly ripe because it had already been subject to the requirement. *Id.* Another member's claim was also ripe because it had refused to bid. *Id.* However, in the case before me, no member has been subject to Chapter 31's requirements, and all have bid. Moreover, unlike the ERISA plans in *Associated General Contractors*, which immediately applied to the members' operations upon award of the bid, Chapter 31 may never apply to the members in this case. All the members could continue to bid on and receive County contracts for years to come without ever having to comply with Chapter 31. Thus, plaintiff cannot rely on *Associated General Contractors* to show that plaintiff's subjec-

tive reluctance establishes a present concrete hardship.

Second, plaintiff argues that the existence of Chapter 31 causes the members present hardship because it weakens their bargaining power. For support, plaintiff points to *Chamber of Commerce v. Reich*, 57 F.3d 1099 (D.C.Cir.1995), where the District of Columbia Circuit found ripe a challenge to an Executive Order that disqualified from federal contracts contractors who permanently replaced striking workers. *Id.* at 1110. The court found the claim ripe even though no contractor had yet been disqualified because the mere existence of the order altered the balance of bargaining power between the contractors and their employees by making it easier for employees to decide to strike. *Id.* However, in the case before me, the mere existence of Chapter 31 has no effect on the members' dealings with their employees, at least until a union seeks to organize them, and thus, does not alter the present balance of bargaining power. Therefore, plaintiff's reliance on *Reich* is also misplaced.

Moreover, even if *Reich*'s balance of bargaining power argument could be relevant in the present case, plaintiff offers no evidence to support its allegation that Chapter 31 does indeed alter the balance of bargaining power. The record contains no evidence that Chapter 31 has any effect on the members' dealings with their employees or with any other individuals or businesses. The members make no such statement in their affidavits. At summary judgment, plaintiff must offer evidence in support of justiciability. *Alliant Energy*, 277 F.3d at 919. Plaintiff has not done so; and I reject its argument for this reason as well.

## IV. CONCLUSION

Plaintiff has failed to offer evidence showing that its case is ripe for review.

Plaintiff and its members would rather that Chapter 31 not exist; but they have not been and may never be subject to its requirements. In addition, they offer no evidence to show that the threat of future application has a concrete effect on their daily affairs or that postponing review would cause irremediable hardship. In short, plaintiff asks me to resolve questions about the constitutionality of an ordinance in the absence of a live dispute. As a result, the court is without jurisdiction and must dismiss this case.

**THEREFORE, IT IS ORDERED** that plaintiff's motion for summary judgment is **DENIED,** defendants' motion for summary judgment is **GRANTED** and the case is **DISMISSED** without prejudice.