In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2292

METROPOLITAN MILWAUKEE
ASSOCIATION OF COMMERCE,

*Plaintiff-Appellant,*

*v.*

MILWAUKEE COUNTY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01-C-0149—**Lynn Adelman**, *Judge.*

ARGUED NOVEMBER 8, 2002—DECIDED APRIL 8, 2003

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* The Milwaukee County Board of Supervisors enacted an ordinance that requires certain contractors doing business with the County to, among other things, negotiate "labor peace agreements" with unions that seek to organize their workplaces. The Metropolitan Milwaukee Association of Commerce (MMAC) sued the County, alleging that the ordinance is preempted by the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., and violates the First Amendment. The district court granted summary judgment in favor of the County, finding that the case is not ripe for judicial review. Be-

cause we find that the controversy is fit for judicial review and MMAC would suffer concrete hardship if adjudication of its claims were delayed, we vacate the opinion of the district court and remand the case for consideration of the merits.

## I.  BACKGROUND

On September 28, 2000, the Milwaukee County Board of Supervisors adopted Chapter 31 of the General Ordinances of Milwaukee County, which applied to more than sixty contracting agencies that provide certain services to the County's Departments of Human Services, Aging, and Public Works. *See* MILWAUKEE COUNTY, WIS., GEN. ORDINANCES ch. 31.02(a). The ordinance requires that, when a union seeks to conduct a campaign to represent a contractor's employees, the contractor must enter into a "labor peace agreement" with the union. *See id.* at § 31.03(a). This agreement must include, among other things, the following provisions: (1) the employer will not "express to employees false or misleading information that is intended to influence the determination of employee preference regarding union representation"; (2) the union will not "misrepresent to employees the facts and circumstances surrounding their employment"; (3) the employer will provide the union "with a complete and accurate list of the names, addresses, and phone numbers of the employees"; (4) the employer will provide the union's "members and representatives timely and reasonable access to the workplace for the purpose of providing employees with information about the organization"; and (5) the union will agree to forgo economic action against the employer at the work site. *Id.* at § 31.02 (f)(1)-(6). All disputes over the application of the "labor peace agreement" must be submitted to final and binding arbitration. *Id.* at § 31.02(f)(5). If the employer fails to correct any viola-

tions found by an arbitrator, the County must either terminate the employer's contract or notify the employer of the County's intent to refuse to award future contracts to that contractor during the next request for proposal process. *Id.* at § 31.05(a)(1)-(2). The contractor must include in any contract with the County a pledge to abide by the requirements of Chapter 31 even before a union approaches an employer. *Id.* at § 31.03(a).

MMAC is a non-profit business association whose members include contractors for the County whose contracts are subject to the requirements of Chapter 31. No MMAC member has been contacted by a union seeking to organize, and thus the "labor peace agreement" provisions of Chapter 31 have not yet come into play with a MMAC employer. Nevertheless, MMAC members have received contract renewal offers from the County since the enactment of Chapter 31, and those offers have required the employers to agree to abide by the provisions of Chapter 31 and to provide for such an agreement in their contracts with the County.

MMAC brought suit on behalf of its members, alleging that Chapter 31 is preempted by the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., and violates its members' rights under the First Amendment. Both MMAC and the County filed motions for summary judgment, and the district court ruled in favor of the County, finding that MMAC's claims are not ripe for judicial review. MMAC appeals.

## II.  ANALYSIS

MMAC suggests that the district court's determination that its claims are not ripe, which we review de novo, was error because the ordinance is already being enforced against its members. However, we do not agree with MMAC's characterization of the facts here. MMAC primar-

ily challenges the substantive provisions of Chapter 31, requiring, among other things, negotiation of "labor peace agreements" and restricting dissemination of false or misleading information. Yet the provision of the ordinance MMAC claims has been enforced against it—a requirement that employers include an agreement to abide by Chapter 31 in their contracts with the County—is not germane to the merits of MMAC's underlying claim. No union has approached a MMAC employer seeking to conduct an organizing campaign, so the provisions of the ordinance requiring them to take actions in response to such an event have not been enforced against MMAC members.

Nonetheless, MMAC may still have a claim ripe for review if it meets the requirements established by the Supreme Court for a "pre-enforcement" suit, even though the "labor peace agreement" provisions of Chapter 31 have not yet been enforced against its members. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967). In *Abbott Laboratories,* drug manufacturers contested regulations promulgated by the Food and Drug Administration that required companies to print on their labels or other printed materials the generic name of a prescription drug. *Id.* The companies' pre-enforcement challenge to the rules was not based on actual damage incurred as a result of the regulations, but on the dilemma of having to risk suspension or comply with the rules. *Id.* at 152. The Court found the claims to be ripe and articulated that ripeness determinations depend on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149.

MMAC easily establishes the first of the *Abbott Laboratories* requirements—that the issues be fit for judicial review. The merits of the case turn on whether Chapter 31 is preempted by federal law or violates the First Amendment. The district court found, and we agree, that the challenge raises "almost purely legal issues" that are

"quintessentially fit . . . for present judicial resolution." 201 F. Supp.2d, 942, 949-50 (E.D.Wis. 2002) (quoting *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998)). The County argues that Chapter 31's application must be more clearly fleshed out before it is fit for judicial review. Although it would be useful to have the benefit of the County's interpretation of the terms or reach of the ordinance, the absence of this information will not preclude judicial review of the legal preemption and First Amendment issues. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (finding preemption challenge fit for judicial review even though the state had not yet interpreted the application of the statute's terms).

We next consider the hardship to MMAC of delaying adjudication of its claims. *See Abbott Labs.*, 387 U.S. at 149. MMAC may show hardship by demonstrating either that: (1) enforcement is certain, only delayed, *Texas v. United States*, 523 U.S. 296, 300 (1998); *Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396, 1403 (7th Cir. 1993); or (2) even though enforcement is not certain, the mere threat of future enforcement has a present concrete effect on MMAC's day-to-day affairs and "irremediably adverse consequences" would flow from a later challenge. *Reno v. Catholic Social Servs.*, 509 U.S. 43, 57-58 (1993). The County argues that it is impossible to determine whether a union will ever seek to organize a MMAC-member workplace, that enforcement of the ordinance is not certain, and that Chapter 31 has no effect on the contractors' day-to-day affairs. MMAC points to the requirement that its members acquiesce to Chapter 31 in order to receive County contracts as a hardship sufficient to create a ripe claim.

Chapter 31, and the County's actions following the ordinance, plainly have had an "immediate and practical impact" on MMAC employers. *See Frozen Food Express v.*

*United States*, 351 U.S. 40, 44 (1956).[1] MMAC employers must include in County contracts an agreement to abide by Chapter 31 in order to maintain preexisting contracts with the County or be considered for new contracts. The County has refused to enter into contracts with MMAC members that expressed their objection to Chapter 31 by amending or striking Chapter 31 language from their contract offers. In one instance, the County mistakenly accepted a contract modified by a MMAC member to omit the Chapter 31 language. When the strike-through of the Chapter 31 language was discovered, the County advised the contractor that it would not be paid for services rendered under the original contract unless it signed a new, unmodified contract as-is. In addition, in several cases the County has delayed payment for services already rendered by MMAC contractors under a preexisting contract because that member refused to sign a new contract containing Chapter 31 language. According to affidavits signed by MMAC members Lutheran Social Services of Wisconsin and Upper Michigan, Inc., Transit Express, Inc., and Lad Lake, Inc., after members refused to enter into contracts with Chapter 31 terms, the County withheld payment for services rendered under preexisting contracts.

As a result of these actions, MMAC employers have been faced with a Hobson's choice: accept Chapter 31 with its future burdens or give up lucrative County contracts that, in some cases, are the lifeline of their businesses. When a party is faced with the choice between the disadvantages of complying with an ordinance or risking the harms that come with noncompliance, we are satisfied that

---

[1] Although MMAC does not argue that future enforcement of the "labor peace agreement" provisions of Chapter 31 is certain, we do find it noteworthy that, since the passage of Chapter 31, unions have approached three different non-MMAC County contractors and invoked the provisions of Chapter 31.

an actual "case or controversy" exists that allows a court to act. *See Smith v. Wisconsin Dept. of Agric., Trade, & Consumer Prot.*, 23 F.3d 1134, 1141-42 (7th Cir. 1994) ("[P]laintiff should not be required to face the Hobson's choice between forgoing behavior that he believes to be lawful and violating the challenged law at the risk of prosecution."); *see also Whitney v. Heckler*, 780 F.2d 963, 968-69 n.6, (11th Cir. 1986) ("It is well established that an issue is ripe for judicial review when the challenging party is placed in the dilemma of incurring the disadvantages of complying or risking penalties for noncompliance."). Now saddled with contracts containing an agreement to abide by the burdensome ordinance, MMAC members are placed in a worse position than they faced pre-ordinance, even if, after a legal battle, the contractors successfully argue that they are not bound by that agreement. As we have noted in the standing context, the increased uncertainty and risk that accompanies such a change constitutes an injury. *Cf. Johnson v. Allsteel*, 259 F.3d 885, 888-89 (7th Cir. 2001) (finding plaintiff suffered injury when amendment to benefit plan created increased risk for employee).

Other circuits have reached similar conclusions. In *Employers Association v. United Steelworkers*, 32 F.3d 1297, 1299-1300 (8th Cir. 1994), an association of employers challenged a state statute making it an unfair labor practice to hire permanent replacements for striking workers. There, the union, which already had a relationship with the employers, had not yet called a strike against any member employer. *Id.* Nonetheless, the Eighth Circuit found that the mere existence of the statute "permanently and substantially shifts the terms of bargaining in favor of the union, even in situations where the possibility of a strike appears remote." *Id.* at 1299. Employer members are injured by the statute, the court found, even if the union did not threaten to strike because "the economic

weapon of hiring permanent-replacement workers would no longer form the backdrop to labor-management discussions." *Id.* at 1300. Similarly, in *Chamber of Commerce v. Reich*, 57 F.3d 1099, 1100 (D.C. Cir. 1995), the D.C. Circuit found ripe a challenge to an Executive Order allowing disqualification of any federal contractor that permanently replaced striking workers. The court found that the mere existence of the order "alters the balance of bargaining power between employers and employees by creating a disincentive for employers to hire replacement workers and thereby depriving them of a significant economic weapon in the collective bargaining process." *Id.* As in *Employers Association* and *Chamber of Commerce*, the presence of a promise to negotiate "labor peace agreements" with prospective unions fundamentally weakens MMAC members' positions in the labor market.

Here, we reach the same conclusion as to MMAC's claims under the First Amendment. Its facial argument, that the prohibition against expressing false or misleading information that is intended to influence an employee's union vote violates the First Amendment, may be addressed without reference to administration of the ordinance. *See Am. Booksellers Ass'n Inc. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985). Here, as in *Hudnut*, "deferred adjudication would produce tempered speech without assisting in resolution of the controversy." *Id.* We find MMAC's claims to be ripe for review.

We remand the case to the district court to consider, in the first instance, whether Chapter 31 is preempted by federal law or violates the First Amendment. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (federal appellate court will generally not consider an issue not passed upon below). Because the district court's ruling that the cause is not ripe truncated the development of the issues in this case, we remand with the suggestion that the district court encourage the parties to develop

facts underlying the County's motivation for enacting the ordinance. We do not find that "the proper resolution of th[ese] issue[s] is beyond doubt" and "the benefit of a district court hearing is minimal because proper resolution of th[ese] issue[s] is clear," *AAR Int'l, Inc. v. Ninelias Enters., S.A.*, 250 F.3d 510, 523 (7th Cir. 2001), so as to warrant an exception to this general principle.

## III. CONCLUSION

The judgment of the district court is VACATED and the case is REMANDED for proceedings consistent with this opinion.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*